No. 50,174

STATE OF KANSAS, *Appellant,* v. JOHN PHILLIP PLATTEN, *Appellee.*

(594 P.2d 201)

Opinion filed May 5, 1979.

*Wm. Rex Lorson,* of Salina, argued the cause and was on the brief for appellant.

*Robert S. Jones,* of Norton, Wasserman & Jones, of Salina, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by the State pursuant to K.S.A.

1978 Supp. 22-3603, from an order suppressing certain physical evidence as being the product of an illegal arrest.

The facts arose from a "buy-bust" narcotics operation conducted by the Federal Drug Enforcement Agency (FDEA), the Kansas Bureau of Investigation (KBI), and the Saline County Sheriff's office.

On March 7, 1978, special undercover agent Bobby Baldwin of the KBI was contacted by one Kenneth Maddox, a resident of Salina. Maddox indicated he had four ounces of cocaine for sale. The record does not disclose any prior dealings with Maddox and he was not acting as an informant or agent. Later that afternoon Baldwin called Maddox to set up the buy. It was agreed they would meet at Sunset Plaza Shopping Center in Salina at 5:30 p.m. the same day. From the initial meeting place they were to proceed to Maddox's partner's house to pick up the cocaine. The various law enforcement agencies involved were alerted and plans made in hopes of "busting" both Maddox and his then unknown partner.

Baldwin, wired with a hidden transmitter monitored by other officers, and agent James Miller, of the FDEA, drove to Sunset Plaza where they awaited Maddox. Several undercover units, who were kept advised via the transmitter, kept them under surveillance. At the agreed time, Maddox arrived in a car driven by Geraldine Dickenson. Maddox advised Baldwin and Miller he had only three ounces of cocaine instead of four and the price, to be paid in advance, was $2,000 per ounce. The agents agreed to these terms but demanded that they be present during the buy from Maddox's partner. Maddox objected, saying his partner's residence could not be revealed. Finally it was agreed the agents would follow Maddox to the vicinity of his partner's residence where they would give Maddox $2,000 to take to his partner's house so he could obtain one ounce of cocaine. Maddox would then return to the agents, and if the cocaine was satisfactory, they would give Maddox an additional $4,000 so he could return to his partner and obtain the remaining two ounces.

Baldwin and Miller followed Maddox and Dickenson to a residential area in Salina where they parked. The other officers, being kept advised over the transmitter, followed and took up observation positions in the area. There the agents gave Maddox $2,000 in marked $100 bills. Maddox left the parked cars, walked

around the corner out of the sight of Miller and Baldwin and down the street where one of the other officers observed him enter the front door of the dwelling at 327 North Thirteenth. This dwelling, consisting of three apartments, one of which was occupied by the defendant, had not previously been under surveillance. The only access to defendant's apartment was the front door which opened directly into his apartment.

Minutes later, Maddox came out of the front door, walked back to where agents Miller and Baldwin were parked, and gave them a clear plastic bag containing what was later identified as cocaine. Maddox was immediately placed under arrest and the other officers were so advised.

Two plainclothes and two uniformed officers then went to the front door of 327 North Thirteenth. Upon approaching the house, they could hear movement inside. The officers knocked on the door and, receiving no response, began to beat on the door and one yelled "police officers." This continued for several minutes but still there was no response. Fearing the destruction of evidence, the officers forced open the door and defendant, Platten, who was the sole occupant of the house, was arrested. He was searched for weapons and evidence at that time and seventeen of the one hundred dollar bills were found in his pocket. The remaining three hundred dollars was found on Maddox when he was subsequently searched at the county jail. The residence was secured and Platten remained at the house in the custody of two officers. Based upon the recovery of the seventeen marked bills, the conversations with Maddox heard over the transmitter, and the bag of white powder given to Baldwin and Miller, the other officers obtained a search warrant and returned at 8:50 p.m. to conduct a search of Platten's residence. Several bags of cocaine, marijuana, and unknown pills were found. Platten was charged with one count of sale of a narcotic drug and one count of possession of a narcotic drug (cocaine), K.S.A. 1978 Supp. 65-4127a.

Appellee, Platten, prior to the preliminary hearing, filed a motion to suppress the evidence consisting of the seventeen one hundred dollar bills and the drugs and, after a full hearing, both sides filed briefs as requested by the court. The trial court concluded the arrest was improper because an arrest warrant should have been obtained prior to entering the house. Based upon this

conclusion the court further ruled that all proceedings occurring after the illegal arrest were also improper and therefore, evidence found on appellee at the time of his arrest and any evidence found pursuant to the search warrant were suppressed as "fruit" of the illegal arrest. From this ruling the State appeals.

At the outset the defendant-appellee raises a jurisdictional challenge contending that no appeal lies from a ruling of the court made prior to a preliminary hearing.

K.S.A. 1978 Supp. 22-3603 provides:

"When a judge of the district court, prior to the commencement of trial of a criminal action, makes an order quashing a warrant or a search warrant, suppressing evidence or suppressing a confession or admission an appeal may be taken by the prosecution from such order if notice of appeal is filed within ten (10) days after entry of the order. Further proceedings in the trial court shall be stayed pending determination of the appeal."

Defendant argues that a preliminary examination is not a trial and that the language of the statute "prior to the commencement of trial" precludes an appeal unless the ruling is made after a preliminary hearing and presumably when the case is ready for trial. Defendant contends the State's proper remedy is to refile the complaint and proceed to seek another preliminary hearing. We do not agree. We are of the opinion that defendant attempts to construe the statute too narrowly. In our opinion the language "prior to commencement of trial" means that at any stage of the proceedings before the actual start of the trial, an interlocutory appeal may be taken from any order of the court quashing a warrant or a search warrant, suppressing evidence or suppressing a confession or admission. K.S.A. 22-3216(4) specifically provides that a motion to suppress illegally seized evidence may be made before or during a preliminary examination. See also *State v. Dailey,* 209 Kan. 707, 498 P.2d 614 (1972). Appellee's procedural argument that this court lacks jurisdiction of this appeal is without merit.

This brings us to the principal issue before this court which is to determine whether the defendant's arrest without a warrant and the subsequent searches by officers violated his rights under the Fourth Amendment and Section 15 of the Kansas Constitution Bill of Rights. Section 15 of the Kansas Bill of Rights provides:

"The right of the people to be secure in their persons and property against

unreasonable searches and seizures, shall be inviolate; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons or property to be seized."

The Fourth Amendment to the United States Constitution, while not identical, is essentially the same.

Decisions of the United States Supreme Court make it clear that a valid arrest for a felony may be made without a warrant when done in a public place based upon probable cause. See *United States v. Santana*, 427 U.S. 38, 49 L.Ed.2d 300, 96 S.Ct. 2406 (1976) and *United States v. Watson*, 423 U.S. 411, 46 L.Ed.2d 598, 96 S.Ct. 820 (1976).

K.S.A. 22-2401(c)(1) authorizes a law enforcement officer to make a warrantless arrest when he has probable cause to believe that the person is committing or has committed a felony. However, the existence of probable cause does not per se authorize a forcible entry into a person's residence to make a warrantless arrest. Assuming in the present case that probable cause existed, the critical question is under what circumstances may officers enter a suspect's residence to effect a felony arrest for which they have statutory authority and probable cause but no warrant? The United States Supreme Court has expressly avoided ruling on this issue on a number of occasions. See *United States v. Santana*, 427 U.S. at 45; *Coolidge v. New Hampshire*, 403 U.S. 443, 481, 29 L.Ed.2d 564, 91 S.Ct. 2022 (1971); *Jones v. United States*, 357 U.S. 493, 499-500, 2 L.Ed.2d 1514, 78 S.Ct. 1253 (1958). However, Mr. Justice Stewart, writing for the majority, in *Coolidge v. New Hampshire* stated:

"It is clear, then, that the notion that the warrantless entry of a man's house in order to arrest him on probable cause is *per se* legitimate is in fundamental conflict with the basic principle of Fourth Amendment law that searches and seizures inside a man's house without a warrant are *per se* unreasonable in the absence of some one of a number of well-defined 'exigent circumstances.' . . .

. . . .

"If we were to accept Mr. Justice White's view that warrantless entry for purposes of arrest . . . . [is] *per se* reasonable, so long as the police have probable cause, it would be difficult to see the basis for distinguishing searches of houses and seizures of effects. . . .

"If we were to agree with Mr. Justice White that police may, whenever they have probable cause, make a warrantless entry for the purpose of making an arrest . . . . then by the same logic *any* search or seizure could be carried out without a warrant, and we would simply have read the Fourth Amendment out of the Constitution." 403 U.S. at 477-80.

It is settled that searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment to the United States Constitution, subject only to a few specifically established and well-delineated exceptions. *G. M. Leasing Corp. v. United States,* 429 U.S. 338, 50 L.Ed.2d 530, 97 S.Ct. 619 (1977); *Cady v. Dombrowski,* 413 U.S. 433, 37 L.Ed.2d 706, 93 S.Ct. 2523 (1973); *United States v. United States District Court,* 407 U.S. 297, 318, 32 L.Ed.2d 752, 92 S.Ct. 2125 (1972); *Coolidge v. New Hampshire,* 403 U.S. 443; *Chambers v. Maroney,* 399 U.S. 42, 26 L.Ed.2d 419, 90 S.Ct. 1975 (1970); *Chimel v. California,* 395 U.S. 752, 23 L.Ed.2d 685, 89 S.Ct. 2034 (1969); *Katz v. United States,* 389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507 (1967).

The Fourth Amendment protects a citizen's reasonable expectations of privacy and one's reasonable expectation of privacy in the home is entitled to unique sensitivity. *United States v. Martinez-Fuerte,* 428 U.S. 543, 561, 565, 49 L.Ed.2d 1116, 96 S.Ct. 3074 (1976); *Katz v. United States,* 389 U.S. 347.

The issue of a warrantless arrest within a person's residence has been carefully considered in various federal circuit courts as well as state courts. In each of the United States circuit courts that have decided the issue, the cases hold that Fourth Amendment protection requires an arrest warrant to validly arrest a person in his home unless exigent circumstances exist to justify the warrantless intrusion. *United States v. Reed,* 572 F.2d 412 (2nd Cir. 1978); *Salvador v. United States,* 505 F.2d 1348 (8th Cir. 1974); *United States v. Phillips,* 497 F.2d 1131 (9th Cir. 1974); *United States v. Shye,* 492 F.2d 886 (6th Cir. 1974); *Dorman v. United States,* 435 F.2d 385 (D.C. Cir. 1970).

In *Monroe v. Darr,* 221 Kan. 281, 559 P.2d 322 (1977), a civil suit against the sheriff of Sedgwick County, this court said:

"Probable cause alone is not sufficient to justify a warrantless search or entry into a private residence. In addition to probable cause it is necessary for the police officer to show exigent circumstances which make an immediate warrantless search imperative." p. 287.

In the case at bar, there is no dispute that appellee was arrested within the privacy of his home, that he did not consent to the entry by police, that the police forcibly broke into his home and that no warrant was obtained prior thereto. Such an intrusion upon a person's right to privacy, absent exigent circumstances, is

a violation of the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Bill of Rights. Were there sufficient exigent circumstances to warrant such action?

The State argues that the defendant expected Maddox to return within minutes to obtain the other two ounces of cocaine and that when he did not do so, it was reasonable for the officers to assume that defendant would become suspicious and attempt to dispose of the one hundred dollar bills and the bags of cocaine by flushing them down the toilet. There is no doubt that the items seized were what are evidently known in the trade as "flushables."

The trial court relied upon *United States v. Reed*, 572 F.2d 412 (2d Cir. 1978) and *State v. Schur*, 217 Kan. 741, 538 P.2d 689 (1975) in finding that exigent circumstances did not exist in the present case. In *United States v. Reed* the court set forth certain factors which may be considered in determining whether exigent circumstances exist. While not exclusive, they include (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause; (4) strong reasons to believe that the suspect is in the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended and (6) the peaceful circumstances of the entry. It is also recognized that the possible loss or destruction of evidence is a factor to be considered. *Roaden v. Kentucky*, 413 U.S. 496, 505, 37 L.Ed.2d 757, 93 S.Ct. 2796 (1973); *State v. Schur*, 217 Kan. at 745. After a discussion of *Schur* and *Reed*, the trial judge in his ruling stated:

"The Court in applying these principles as well as those other principles set forth in the State and defense briefs has concluded that there was an alternate and constitutional means at the disposal of the police officers in this case; that exigent circumstances under the particular circumstances of this case did not exist.

"[I]t does appear . . . in these circumstances these premises could have been secured to prevent the possibility of escape of any person residing at this address occupying the premises, and a search warrant could have been secured based upon probable cause. . . . The only risk involved in that procedure would have been the possible destruction of evidence and the Court under these circumstances does not consider that sufficient to place this case in the category of so-called exigent circumstances."

The trial court concluded as a matter of law that upon the facts of this case exigent circumstances did not exist. We have re-

viewed the record and agree with the trial court's conclusion. The burden of proof was upon the State to prove the legality of the initial arrest. *State v. Schur,* 217 Kan. 741, Syl. ¶ 2. Not having done so the trial court was not in error in suppressing the evidence seized at the initial warrantless arrest and seized as a result of the subsequent search of the residence with a warrant. Such evidence is fruit of the poisonous tree and as such was inadmissible. See *Wong Sun v. United States,* 371 U.S. 471, 9 L.Ed.2d 441, 83 S.Ct. 407 (1963). Appellant argues that even if exigent circumstances did not exist the evidence is still admissible under the "independent source" and "attenuated taint" theories commented upon in *Wong Sun.* A careful review of the record does not disclose that these exceptions to the requirement of exigent circumstances would be applicable in the present case.

We have considered all points raised by the State and, in view of the foregoing, find them to be without merit.

The judgment is affirmed.

MILLER and McFARLAND, JJ., dissenting.