No. 91,437

STATE OF KANSAS, *Appellee*, v. STEVEN R. THOMAS, *Appellant*.

(124 P.3d 49)

Opinion filed December 9, 2005.

*Michael P. Whalen*, of the Law Office of Michael P. Whalen, of Wichita, argued the cause and was on the briefs for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion was delivered by

LUCKERT, J.: This case involves an entry into a third party's house by law enforcement officers who did not have a search warrant but were pursuing the subject of an outstanding felony arrest warrant who had been approached by the officers in a public area and who fled into the house. Defendant Steven Thomas, the owner of the subject house, appeals the district court's denial of his motions to suppress evidence accumulated as a result of the officers' entry and search of the residence. The district court found the entry into Thomas' home, although not supported by a search warrant, was constitutionally permissible under the hot pursuit doctrine. The Court of Appeals affirmed. *State v. Thomas*, Case No. 91,437, unpublished opinion filed February 11, 2005. Upon our review of that decision, we affirm.

## FACTS

Just before midnight on March 26, 2002, the Sedgwick County Sheriff's Department received information from a confidential informant that Brandon Prouse was trying to sell the informant 5 or 6 quarts of anhydrous ammonia. Deputies ran a background check on Prouse and discovered that he was wanted on a felony arrest warrant for a probation violation in an aggravated battery case. At around 1:30 a.m. on March 27, 2002, the sheriff's office began surveillance on the house where the informant indicated Prouse might be found. At the time of the surveillance, however, the deputies neither had a search warrant for the house, nor did they know who owned the residence.

At about 2 a.m., Prouse stepped out of the house and walked into the front yard. The uniformed deputies ordered him to stop, but Prouse ran back into the residence through the front door. Four deputies followed Prouse inside. They pursued Prouse through different rooms and then arrested him.

Inside the house, the deputies smelled a strong odor of anhydrous ammonia. As they moved through the residence, the deputies saw in plain view various items that they believed were consistent with a methamphetamine lab. Besides Prouse, the deputies discovered six other individuals inside the house, including Thomas, who owned the residence. A deputy started to open an interior door into the garage to check for more people, but the smell of anhydrous ammonia from the garage was so overwhelming that he immediately shut the door. Because of the strong chemical smell and for safety reasons, the deputies ordered all occupants to go outside onto the front lawn area.

Once the occupants of the house were outside, one of the deputies told his fellow deputies that he would perform a pat-down search of the seven occupants. When the deputy asked Thomas who owned the house, Thomas admitted ownership. During the pat-down search, Thomas said, "You might as well get [my] dope," and indicated that he had methamphetamine in his left front pants pocket. The deputy reached into Thomas' pocket and pulled out a bag containing smaller baggies filled with white rocks. Thomas was then placed under arrest.

At the sheriff's office, a detective started to *Mirandize* Thomas when Thomas interrupted and said "that wasn't necessary" because both the methamphetamine lab and the drugs found on his person belonged to him. The detective proceeded to *Mirandize* Thomas, but Thomas refused to sign the waiver form. Despite Thomas' refusal to sign the form, he orally indicated that he was willing to speak with the officers. Thomas, again, admitted ownership of the methamphetamine lab in his house and the drugs found on his person. Thomas told the officers that he learned how to make methamphetamine in prison. He indicated that this was his first attempt at manufacturing methamphetamine and that, sometime before the deputies' arrival at his house, the lab had blown up. In addition, Thomas admitted that he had obtained anhydrous ammonia and a large quantity of pseudoephedrine pills.

Initially, Thomas was charged with unlawfully manufacturing a controlled substance, illegal possession of pseudoephedrine, and possession of methamphetamine with intent to sell. The State added a no tax stamp charge at the preliminary hearing. Defense counsel filed motions to suppress any evidence obtained as a result of the deputies' search of Thomas' person and his residence and to suppress any of Thomas' statements made to officers. After various continuances, Thomas waived his jury trial, and a bench trial began on January 15, 2003.

The district court implicitly denied Thomas' motions to suppress, finding Thomas guilty of unlawfully manufacturing a controlled substance, illegal possession of pseudoephedrine, and possession of methamphetamine with intent to sell. Thomas was acquitted of the no tax stamp violation. The district court found, *inter alia*, that the deputies intended to wait until Prouse came out of the residence to arrest him. The court also found that the deputies had probable cause to believe that Prouse was the person who came out of the house during the surveillance, that the deputies were in "hot pursuit" of Prouse, and that "exigent circumstances allowed them to enter the house without a warrant." The district court concluded that Thomas' constitutional rights were not violated when the deputies chased Prouse into Thomas' home. Thomas timely appealed.

## COURT OF APPEALS' DECISION

The Court of Appeals affirmed Thomas' convictions but vacated his sentence for his conviction of unlawfully manufacturing a controlled substance and remanded the case for resentencing under *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 (2004). The Court of Appeals further held: (1) Thomas' statutory right to a speedy trial, K.S.A. 22-3402(1), was not violated; (2) the defense failed to show that Thomas was prejudiced by any alleged judicial misconduct; (3) the district court did not err in denying Thomas' motion to suppress evidence discovered during the deputies' warrantless entry into his residence; and (4) there was sufficient evidence to support Thomas' conviction of possession of methamphetamine with intent to sell. This court granted Thomas' petition for review of the suppression issue but denied his petition as to the remaining issues.

## ANALYSIS

Thomas contends that the district court should have granted his motions to suppress his statements and the evidence found in his house. Before trial, Thomas moved to suppress the evidence seized by the deputies on the night of his arrest and also to suppress his incriminating statements on the basis that they were not made pursuant to a knowing and voluntary waiver of his rights. However, in his direct appeal and in his petition for review, Thomas briefed only the issue involving the deputies' entry into his house without a warrant while following Prouse. Thus, the entry issue is the only one properly before this court. See *State v. Brown*, 272 Kan. 843, 844, 35 P.3d 910 (2001) (an issue which is not briefed is deemed abandoned).

Regarding the constitutionality of the deputies' entry into his home, Thomas argues that the arrest warrant upon which the deputies based their chase of Prouse did not authorize their entry without a search warrant into the home of a third party. Further, Thomas contends there were no exigent circumstances to support the entry.

Thomas' arguments raise an issue of first impression: Does the Fourth Amendment to the United States Constitution or § 15 of the Kansas Constitution Bill of Rights prohibit the entry of law

enforcement officers into a home when officers are in hot pursuit of the subject of a felony arrest warrant who has fled from a public area into the house, even though the arrestee does not own or reside in the house, and even though the officers do not have a search warrant for the house? To examine this narrow issue we will look at the decisions regarding the warrant requirement and exceptions to that requirement and then examine Thomas' arguments regarding the specific circumstances of this case.

## A. *Standard of Review*

When reviewing a motion to suppress evidence, this court reviews the factual underpinnings of the district court's decision by a substantial competent evidence standard, and we utilize de novo review when examining the district court's ultimate legal conclusion drawn from those facts. The ultimate determination of the suppression of evidence involves a legal question requiring independent appellate review. *State v. Ingram*, 279 Kan. 745, 750-51, 113 P.3d 228 (2005); *State v. Horn*, 278 Kan. 24, 30, 91 P.3d 517 (2004). When, as in the present case, the material facts are not in dispute, the question regarding the suppression of evidence is solely one of law. *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004); *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003).

## B. *Warrant Requirement and Exceptions*

### 1. *Warrant Requirement*

The Fourth Amendment prohibits law enforcement officers from making a warrantless and nonconsensual entry into a home in order to make a routine felony arrest absent exigent circumstances. *Payton v. New York*, 445 U.S. 573, 586, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). The majority in *Payton* noted it was "a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable," while "objects . . . found in a public place may be seized by the police without a warrant." 445 U.S. at 586-87. The Court concluded that "this distinction has equal force when the seizure of a person is involved" because "an entry to arrest and an entry to search for and to seize property implicate the same interest

in preserving the privacy and the sanctity of the home, and justify the same level of constitutional protection." 445 U.S. at 587, 588. Thus, the Court concluded: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." 445 U.S. at 589-90.

In Kansas we have recognized the same protection under Section 15 of the Kansas Constitution Bill of Rights. *State v. Mendez,* 275 Kan. 412, 420, 66 P.3d 811 (2003).

### 2. Arrest Warrant Authorizes Entry Into Suspect's Home

However, in *Payton* the United States Supreme Court recognized that a search warrant was not constitutionally required if the entry was made into a home where one who was the subject of a felony arrest warrant resided if there was probable cause to believe the subject was present in the home. The Court stated:

"It is true that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. at 602-03.

See also *United States v. Bervaldi,* 226 F.3d 1256 (11th Cir. 2000) (*Payton* rule applies for bench warrants); *Perez v. Simmons,* 900 F.2d 213 (9th Cir. 1990), *amending* 884 F.2d 1136 (9th Cir. 1989) (police may enter home with arrest warrant only with probable cause to believe person named in warrant resides there).

Thus, had the officers followed Prouse into a house in which he resided in order to serve the warrant, the entry would have been constitutional. (This assumes the validity of the warrant. Thomas asserts the warrant against Prouse was not sufficient to satisfy the *Payton* rules. That argument will be discussed later.)

In the present case, however, there is nothing in the record to indicate that the officers believed Prouse owned or resided at the house.

### 3. Third Party's House

An arrest warrant, standing alone, is not a sufficient basis to enter the home of a third party. The United States Supreme Court reached this holding in *Steagald v. United States*, 451 U.S. 204, 68 L. Ed. 2d 38, 101 S. Ct. 1642 (1981). In *Steagald*, a confidential informant contacted an agent of the Drug Enforcement Administration, suggesting he might be able to locate Ricky Lyons, a federal fugitive wanted on drug charges. Agents found the address where they thought Lyons was located and, 2 days later, drove to the residence. Gary Steagald and Hoyt Gaultney stood outside of the house. After the agents frisked the two men and discovered that neither man was Lyons, they went to the front door. Gaultney's wife answered the door and told the agents she was alone. The agents proceeded, without consent, into the house and searched for Lyons. Although they did not find Lyons, the agents found cocaine. They subsequently obtained a search warrant and ultimately found 43 pounds of cocaine. Steagald was arrested on federal drug charges.

The Supreme Court stated that the agents had neither consent nor exigent circumstances when they made their initial, warrantless search. 451 U.S. at 211. The Court phrased its narrow issue for consideration as "whether an arrest warrant — as opposed to a search warrant — is adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances." 451 U.S. at 212. The *Steagald* Court recognized that different interests are protected by arrest warrants and search warrants. Arrest warrants protect individuals from unreasonable seizures; search warrants protect against the unjustified intrusion of police into one's home. The Court found that the agents wrongly relied on Lyon's arrest warrant to give them the legal authority to enter into a third person's home. Thus, the third person's privacy interests were left unprotected. 451 U.S. at 213.

The *Steagald* Court feared that allowing officers, without consent or exigent circumstances, to enter into a third party's residence to search for the subject of an arrest warrant "would create a significant potential for abuse" and pointed out that officers would then be able to use arrest warrants as a pretext for entering the residences of a suspect's friends and acquaintances or as a pretext for entering residences in which police have mere suspicion, not probable cause, that illegal activity is being committed. The Court held that, under the facts of the case, the warrantless search was unconstitutional. 451 U.S. at 215-16.

However, the United States Supreme Court was careful to exempt two circumstances from its holding: consent and exigent circumstances. 451 U.S. at 212. In this case, the State does not allege there was consent. Rather, the State relies upon exigent circumstances, an argument adopted by the Court of Appeals.

### 4. Exigent Circumstances

The Court of Appeals, in holding that the deputies' conduct was justified by exigent circumstances, found that the present case is similar to *United States v. Santana*, 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976). Dominga Santana stood in the doorway of her own house when officers arrived to arrest her. When she saw the police, the defendant went inside the vestibule of the house. The officers followed the defendant inside and arrested her.

Santana filed a motion to suppress the incriminating evidence found during and after her arrest. The federal district court granted Santana's motion, holding that Santana's " 'reentry from the doorway into the house' " did not support the officers' warrantless entry into the house on the basis of hot pursuit because they were not chasing Santana in the public streets. 427 U.S. at 41. The United States Supreme Court, however, disagreed with the lower court and determined that Santana's pursuit originated in a public place. Further, "[t]he fact that the pursuit here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into Santana's house." 427 U.S. at 43. As for the police officers' entry into the defendant's house, the Court concluded: "[A] suspect may not defeat an arrest which has

been set in motion in a public place . . . by the expedient of escaping into a private place." 427 U.S. at 43.

*Santana* addressed a situation involving police entry into the suspect's house. The current set of facts involves the warrantless entry of police into a third party's house while trying to apprehend a suspect on an arrest warrant. The Court of Appeals did not discuss this distinction and did not cite or discuss *Steagald.* Thomas not only does not cite *Steagald,* he does not cite or discuss *Santana.* He does, however, emphasize the distinction between entry into a home owned or resided in by the subject of an arrest warrant and entry into the home of a third party. Thus, he preserved the question of whether the Court of Appeals' reliance on *Santana* was justified when officers entered the home of a third party, rather than the suspect's own home, when in pursuit of the subject of an arrest warrant.

Although *Steagald* did not directly address this question, the Court carefully noted that the facts of the case did not involve either consent or exigent circumstances. *Steagald,* 451 U.S. at 212. Further, discussing the historical basis for the "hot pursuit doctrine," the Court concluded that English common law "suggests that forcible entry into a third party's house was permissible only when the person to be arrested was pursued to the house." 451 U.S. at 218. The Court stated: "We have long recognized that such 'hot pursuit' cases fall within the exigent-circumstances exception to the warrant requirement, see *Warden v. Hayden,* 387 U.S. 294 (1967), and therefore are distinguishable from the routine search situation presented here." *Steagald,* 451 U.S. at 218. Later in the decision, the Court dismissed the government's argument that practical problems would arise if law enforcement were required to obtain a search warrant before entering the home of a third party. The Court noted these practical problems were largely ameliorated because "the situations in which a search warrant will be necessary are few." 451 U.S. at 221. As examples, the Court noted that (1) "an arrest warrant alone will suffice to enter a suspect's own residence" (451 U.S. at 221); (2) "if probable cause exists, no warrant is required to apprehend a suspected felon in a public place" (451 U.S. at 221); (3) "the subject of an arrest warrant can

be readily seized before entering or after leaving the home of a third party" (451 U.S. at 221); and (4) under the exigent circumstances doctrine, "a warrantless entry of a home would be justified if the police were in 'hot pursuit' of a fugitive." 451 U.S. at 221. In noting the hot pursuit doctrine's application, the Court cited *Santana*, 427 U.S. 38.

Thus, although it was not the specific issue before the Court, the *Steagald* decision recognizes the constitutionality of an entry into the home of a third party when officers are in pursuit of a suspect who is first approached in a public area. See 451 U.S. at 217-18.

At least one court has applied the hot pursuit doctrine when the subject of an arrest warrant was pursued into the home of a third party. In *United States v. Williams*, 2004 WL 1637021 (S.D.N.Y.) unpublished opinion filed July 20, 2004, officers went to a third party's apartment after receiving an anonymous tip that Rossi Graham could be found there. There was an outstanding warrant for Graham's arrest based on his assault of a pregnant woman with a hot iron. Officers positioned themselves at both the front door and back door of the apartment. When one officer knocked at the front door and identified himself as a police officer, the police heard someone running inside the apartment. A man who resembled Graham peeked his head outside the back door, stuck it back inside, and yelled, "Oh, shit." He shut and locked the back door. 2004 WL 1637021, at *1.

The officers then entered the apartment and detained three individuals, one of whom was Larry Williams, inside. During their protective sweep, the officers saw narcotics in plain view. Williams and the others were arrested. Although it was later discovered that the man they pursued was not Graham, the officers' entry into the apartment was upheld. The federal district court, citing *Steagald* and *Santana*, held that the warrantless entry into the apartment was justified under the "hot pursuit" doctrine. The *Williams* court concluded:

"Because the officers' entry into the Prince Street Apartment after the individual whom they reasonably believed to be Rossi Graham retreated into the house was justified under the doctrine of hot pursuit, the evidence seized from the Prince

Street Apartment that was in plain view, will not be suppressed." 2004 WL 1637021, at *3.

Even stronger than the situation in *Williams*, the deputies in this case identified the suspect. As in *Williams*, the deputies entered into the house to arrest the suspect and found criminal evidence in plain view.

We agree with the *Williams* court's analysis. Although none of the United States Supreme Court cases directly answer the issue before us, the careful carving of the hot pursuit doctrine from the holding in *Steagald* indicates the Court would recognize an exception to the search warrant requirement when the subject of an arrest warrant is approached by law enforcement officers in a public place and pursued into the home of a third party.

### C. Application of Hot Pursuit Doctrine

Without specific discussion of the hot pursuit exception, Thomas contends there were no exigent circumstances and cites to the list of factors this court has recognized which may be considered in determining if exigent circumstances existed, including:

"(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause; (4) strong reasons to believe that the suspect is in the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended and (6) the peaceful circumstances of entry." *State v. Platten*, 225 Kan. 764, 770, 594 P.2d 201 (1979).

The possible destruction of evidence is also a factor which may be considered. 225 Kan. at 770. Thomas, as the homeowner, contends that these six or seven factors were not met; therefore, the officers violated his constitutional rights.

Although his argument is unclear, it appears that Thomas seeks a factor-by-factor analysis. Prior cases have not required such a review. See, *e.g.*, *Platten*, 225 Kan. at 770. Furthermore, in *Warden v. Hayden*, 387 U.S. 294, 299, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967), the Supreme Court noted the search was "necessary to prevent the dangers that the suspect at large in the house may resist or escape." The United States Supreme Court has recognized that hot pursuit alone justifies a warrantless intrusion into a home.

See, *e.g, Minnesota v. Olson,* 495 U.S. 91, 100, 109 L. Ed. 2d 85, 110 S. Ct. 1684 (1990). This court has also recognized that hot pursuit is one example of an exigent circumstance. *E.g., State v. Mendez,* 275 Kan. 412, 421, 66 P.3d 811 (2003).

Furthermore, the Kansas cases which Thomas cites to support his contention that the deputies lacked exigent circumstances to justify entering his home in pursuit of Prouse are distinguishable. Thomas cites *State v. Huff,* 278 Kan. 214, 92 P.3d 604 (2004), and *Platten,* 225 Kan. 764, where this court held that the evidence did not support the officers' warrantless entry into a defendant's home under the auspices of exigent circumstances. Neither case involved arrest warrants nor the "hot pursuit" of the suspect into the house; both cases are distinguishable on these grounds.

Here, the deputies had an arrest warrant for Prouse, began surveillance of the house where they reasonably believed he could be found, and then spotted Prouse as he first exited and then reentered the house. The district court found that the deputies initially intended to wait for Prouse and to arrest him outside. There is no evidence, or assertion by Thomas, that the deputies used the arrest warrant as a pretext for entering Thomas' house or for searching it for incriminating evidence.

The district court found the doctrine of hot pursuit applied and also found it was impractical to expect the officers to obtain a warrant once Prouse took refuge in Thomas' house. The district court expressed doubt that a search warrant could have been obtained quickly at 2 o'clock in the morning. Unquestionably, if the officers had sought a search warrant, there was a "high possibility that the fugitive named in the arrest warrant [would] escape apprehension." *Steagald,* 451 U.S. at 226 (Rehnquist, C.J., dissenting). Indeed, requiring such police conduct would negate the essence of the hot pursuit doctrine. As previously observed, the chase of a suspect from the threshold of a house into the residence is considered to be "hot pursuit." *Santana,* 427 U.S. at 43.

Furthermore, certain facts in this particular case are important to a conclusion that the officers were justified in making a warrantless entry into a third-party residence. The initial entry and search was limited to the apprehension of Prouse, the suspect

named in the arrest warrant. See *State v. Yardley*, 267 Kan. 37, 41, 978 P.2d 886 (1999) (lawful search extends to entire area where object of search may be found); see also *United States v. Ross*, 456 U.S. 798, 820-22, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982) (lawful search generally extends to entire area where object of search may be found); *Fisher v. Volz*, 496 F.2d 333, 343 (3d Cir. 1974) (officers permitted to search only area where subject/object of warrant might hide). Thomas does not contest the officers' quick protective sweep of the home once they discovered that Prouse was not alone. See *State v. Johnson*, 253 Kan. 356, 370, 856 P.2d 134 (1993) (protective sweep limited to search of premises, incident to arrest, and conducted to protect safety of officers and others; sweep narrowly confined to cursory visual inspection of places where person might hide). There is no indication that the deputies dug into drawers or looked into places where the suspect obviously could not hide.

In addition, the evidence pertaining to the methamphetamine lab was in plain view as the deputies pursued Prouse and made a protective sweep of the residence. It is clear that any evidence seized in plain view must be located in places lawfully accessible to officers. See *State v. Miller*, 222 Kan. 405, 413, 565 P.2d 228 (1977) (if officers are lawfully within premises, they may seize evidence in plain view); *State v. Huff*, 220 Kan. 162, 166, 551 P.2d 880 (1976) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 [1971]) (recognizing that plain view alone does not justify warrantless seizure of evidence); *State v. Crouch*, 192 Kan. 602, 606, 389 P.2d 824 (1964) (officers could seize government property, illegally possessed by defendant in plain view, upon authorized entry of premises). The strong smell of anhydrous ammonia was prevalent throughout the house, and various items consistent with the manufacture of methamphetamine sat in plain view in the kitchen area.

### D. Arrest Warrant and Probable Cause

Thomas makes an additional argument, contending the deputies lacked probable cause to search his house in that the suspect's arrest warrant was based on a probation violation, as opposed to the commission of a new felony. Although his argument is not clear,

Thomas appears to assert that the deputies' entry into a third-party home was even more egregious because they lacked probable cause to believe a new crime had been or was being committed. Thomas tries to equate the current situation to situations involving probable cause supporting the issuance of a search warrant or involving probable cause to arrest in absence of an arrest warrant. Thomas' contention is not persuasive, however, in part because the police did not enter the house to search the house or to arrest Thomas. Further, as to Prouse, there was a warrant for his arrest on a crime for which he had been convicted.

To support his probable cause argument, Thomas cites *State v. Ruden*, 245 Kan. 95, 774 P.2d 972 (1989), where the State appealed the district court's decision to grant the defendant's motion to suppress. Two bench warrants were issued for Robert Ruden's failure to appear in limited actions civil cases. The deputies attempted to serve the warrants on Ruden by going to his apartment house. Ruden's wife told the officers that Ruden was not there. The police eventually entered the apartment and began a search without a search warrant. They found drugs and drug paraphernalia and arrested his wife for possession of marijuana.

This court examined whether the bench warrants authorized the deputies' entry into Ruden's home. The limited actions statute permitting such warrants did not require a probable cause finding concerning the commission of a crime; therefore, the *Ruden* court concluded the warrants could not comply with the requirements of the Fourth Amendment and the Kansas Constitution Bill of Rights. This court held that the bench warrants were inadequate to support the deputies' entry into the apartment. 245 Kan. at 104.

As the Court of Appeals correctly determined, the present case is distinguishable. *Ruden* neither involved criminal felony warrants nor the doctrine of "hot pursuit." It is undisputed that the deputies in the present case possessed a felony arrest warrant for Prouse based upon a probation violation on the underlying crime of aggravated battery. As the United States Supreme Court emphasized in *Payton*, the existence of an arrest warrant provides a buffer between the suspect and the zealous officer. There is no indication that the warrant was improperly obtained. See K.S.A. 2004 Supp.

22-3716. Further, Prouse was a convicted felon, not a suspect subject only to a probable cause review.

Instead of asking whether the deputies had probable cause to believe Prouse was committing a new crime, the more appropriate question was whether the police had probable cause to believe Prouse would be found in the residence. See *Payton*, 445 U.S. at 603. The law enforcement officers in the present case saw Prouse run into the residence and clearly had probable cause to believe that Prouse was inside. Similar to the situations in *Santana* and *Steagald*, the deputies pursued the subject of an outstanding criminal arrest warrant.

Under the specific facts and circumstances of this case, the deputies were justified in making a warrantless entry into Thomas' residence in the hot pursuit of Prouse and in seizing evidence that was in plain view.

The Court of Appeals' decision affirming the district court's denial of Thomas' motion to suppress evidence based upon the alleged unauthorized entry into a third-party residence is affirmed.

LOCKETT, J., Retired, assigned.