NOT DESIGNATED FOR PUBLICATION

No. 111,681

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANIEL ROMAN MUNOZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed September 4, 2015. Affirmed.

*Johnathan M. Grube*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., HILL, J., and TIMOTHY G. LAHEY, District Judge, assigned.

*Per Curiam:* Daniel Roman Munoz contends the State failed to present sufficient evidence that he was guilty of interference with a law enforcement officer. Our review of the record leads us to the opposite conclusion. We affirm his conviction.

1

*Police officers seek to execute an arrest warrant.*

Seeking to execute a felony arrest warrant for a parole violation by Munoz, Topeka Police officers, lead by Corporal Patrick Salmon, approached a residence owned by Munoz' parents. Prior to arriving at the house, Salmon confirmed the warrant was still valid and active.

Salmon testified that he parked down the street from the residence and got out of his vehicle. He was wearing his police uniform and driving a black police-marked Chevy Tahoe.

As he approached the house, Salmon saw Munoz and his sister, Eloisa, on the front porch smoking. Salmon identified Munoz based on prior encounters and from photographs in the police database. Salmon testified that Munoz looked directly at him and ran into the house followed by his sister. They closed the door. When they made eye contact, Salmon was on the public sidewalk walking toward the residence. Salmon did not have a chance to call out before Munoz entered the house. Salmon ran after Munoz, identified himself as a law enforcement officer, and told Munoz to come out of the house. Salmon testified that while he believed he could have entered the residence in hot pursuit of Munoz, he chose not to because there were several children screaming and crying inside the home.

Salmon told the two officers stationed at the rear of the house that Munoz had entered the house and ordered them to maintain their position. Salmon also requested additional officers to come to the scene.

Salmon testified that he spoke with Eloisa through the front door of the house and told her he had seen Munoz run into the house. Salmon informed Eloisa that he had seen what Munoz was wearing, had every right to enter the house and execute the arrest

warrant, and that Munoz needed to give himself up and cooperate. Eloisa told Salmon that Munoz was not going to go out and give himself up and that Salmon needed to "do what [he] had to do." Salmon explained to Eloisa that the police had the right to break down the door to arrest Munoz and, that if she did not cooperate with the police, they would charge her with harboring a fugitive.

Munoz eventually came to the back door of the residence. The officers testified that Munoz was very angry and was yelling and cursing at them prior to coming outside. Several different officers ordered Munoz to come outside and surrender. Eventually, Munoz left the house and was arrested. No law enforcement officer ever entered the house.

Munoz, in his defense, offered a different version of the facts to the jury. Munoz testified that he was not on the porch when Salmon approached the house, but was actually asleep inside the house in the living room. Additionally, Eloisa testified that she was actually on the porch with her cousin Margaret, and that Munoz was inside the house asleep. Eloisa also testified that on the day in question, Margaret was dressed in similar clothing to Munoz. Munoz said that Eloisa woke him up and told him that a law enforcement officer was outside the house. Munoz then testified that after Salmon threatened his sister with being charged with harboring a fugitive, he agreed to exit the house.

Following the presentation of the State's evidence, Munoz moved for a judgment of acquittal. At the close of trial, Munoz renewed his motion for judgment of acquittal, arguing the officers did not have the authority to enter the house and therefore Munoz did not actually interfere with or obstruct a legal duty. The court denied Munoz' motion.

The jury found Munoz guilty of knowingly interfering with a law enforcement officer. The court sentenced Munoz to a term of imprisonment and postrelease supervision.

On appeal, Munoz argues the district court erred when it denied his motion for a judgment of acquittal because the State failed to prove Munoz guilty of interference with a law enforcement officer. Munoz argues that because Salmon was not authorized to arrest Munoz inside his parents' residence, Munoz did not obstruct Salmon from lawfully serving the warrant by remaining inside.

Since Munoz renewed his motion for acquittal at the close of all evidence, we may review his case for the sufficiency of the evidence presented. See *State v. Copes*, 244 Kan. 604, 607, 772 P.2d 742 (1989).

*We hold* State v. Thomas *controls this issue.*

In deciding whether Salmon was legally authorized to enter the residence to execute the arrest warrant, we look to precedent from the Kansas Supreme Court in *State v. Thomas*, 280 Kan. 526, 124 P.3d 48 (2005). *Thomas* involved an entry into a third party's house by law enforcement officers who did not have a search warrant but were pursuing the subject of an outstanding felony arrest warrant who had been approached by the officers in a public area and who fled into the house. The *Thomas* court reasoned that exigent circumstances could permit such an intrusion by the police in contravention of the general rule prohibiting the police's entrance that was mandated by the United States Supreme Court in *Steagald v. United States,* 451 U.S. 204, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981).

The *Thomas* court went on to hold that hot pursuit was an exigent circumstance:

"Neither the Fourth Amendment to the United States Constitution nor § 15 of the Kansas Constitution Bill of Rights prohibits the entry of law enforcement officers into a home when officers are in hot pursuit of the subject of a felony arrest warrant who has fled from a public area into the house, even though the arrestee does not own or reside in the house, and even though the officers do not have a search warrant for the house." 280 Kan. 526, Syl.

Given this ruling, the resolution of Munoz' case is straightforward. Hot pursuit comes into play as a warrant exception when the law enforcement officers chase a person who then attempts to evade their efforts to arrest or otherwise take him or her into custody. *United States v. Santana*, 427 U.S. 38, 42-43, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976). Or, as this court has held, "hot pursuit 'means some sort of a chase.'" See *State v. Dugan*, 47 Kan. App. 2d 582, 593-94, 276 P.3d 819 (2012).

When we consider the evidence in the light most favorable to the State, a rational factfinder could have found Munoz guilty beyond a reasonable doubt of knowingly obstructing Salmon in the execution of the arrest warrant because a rational factfinder could have determined Salmon was in hot pursuit. There was an arrest warrant for Munoz based on a parole violation, and Munoz made direct eye contact with a police officer down the street from the house and then fled into the house. Appellate courts look only to the evidence in favor of the verdict; they do not weigh the evidence, and if the essential elements are sustained by any competent evidence, the conviction stands. *State v. Pham*, 234 Kan. 649, 668, 675 P.2d 848 (1984). A rational factfinder could have reasonably concluded that when an individual on parole makes direct eye contact with a police officer and immediately flees inside, he was fleeing from the officer and thus obstructing the officer from lawfully executing the arrest warrant. The district court did not err when it denied Munoz' motion for judgment of acquittal.

As a final thought, Munoz contends the district court erred when it increased his sentence based on his criminal history without submitting the question to the jury in

violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The Kansas Supreme Court rejected this argument in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), and we follow the Supreme Court's lead on the issue. There is no error here.

Affirmed.