(992 P.2d 221)
No. 82,843

STATE OF KANSAS, *Appellant,* v. MICHAEL JAMES WEAS, *Appellee.*

Opinion filed November 19, 1999.

*Jim A. Vanderbilt,* county attorney, for appellant.

*Michael C. Hayes,* of Oskaloosa, for appellee.

Before RULON, P.J., PIERRON and KNUDSON, JJ.

KNUDSON, J.: The State brings this interlocutory appeal from the district court's order suppressing evidence obtained during a warrantless search of the defendant's residence. We have jurisdiction to hear this appeal under K.S.A. 22-3603.

We reverse and remand because: (1) the police had probable cause to search with exigent circumstances that obviated the need to first obtain a search warrant; (2) alternatively, under an independent source analysis, the exclusionary rule should not be invoked.

The pertinent facts are as follows. At approximately 9 a.m. on October 25, 1998, the dispatcher at the Jefferson County Sheriff's Office received a 911 call of a possible sexual assault in the vicinity of Lake Perry. Deputy Boyer was requested to investigate. Boyer was assisted by Deputy Welch and Conservation Officer Purvis. Boyer and Purvis spoke to the alleged victim, who appeared to have been badly beaten. She was partially clothed, wearing only a jacket and jeans, both turned inside out. She told the officers that she had been kidnapped outside a bar in Lawrence, Kansas, the previous evening. Two men driving a small vehicle abducted her. She was forced into the vehicle and during the ride was beaten. The men threatened to kill her. She believed she lost consciousness. She woke the next morning in an unfamiliar house at Lake Perry. She had no idea where she was at that time. She ran out the front door of the house, leaving it unlocked. When fleeing, she did notice a man passed out in a bedroom of the house. She was able to obtain assistance at a nearby home and place the 911 call. She was unable to state with certainty whether she had been raped, but the officers realized rape was a strong possibility.

Welch and Purvis went to the home described by the victim. The officers noted a pickup truck on the premises consistent with what the victim had related. Purvis went to the back door, and Welch went to the front door. Purvis knocked on the back door that was locked, but there was no response. Welch did not testify as to whether he knocked at the front door, which was also locked. The officers believed there was probable cause that serious, violent crimes had occurred and to prevent the destruction of evidence and identify and apprehend the perpetrators, immediate entry into the house was necessary.

Officer Purvis went through an open window and opened the door for Welch. The officers searched the house for suspects. While searching, the officers saw in plain view drugs and para-

phernalia at various locations within the house. After determining no one was in the house, the officers then sought and obtained a search warrant for the residence. Thereafter, the warrant was executed and evidence seized relating to drug violations and the sexual assault. Weas, the resident of the house, was charged with various drug violations. It is not clear whether Weas has been charged with any crimes against persons in Jefferson or Douglas Counties.

After hearing Weas' motion to suppress, the district court suppressed all of the physical evidence seized from the house. The trial judge reasoned that the initial search of Weas' residence without a warrant was unlawful and that the evidence subsequently seized under the search warrant was tainted by the initial illegality. The State contends the district court erred, contending: (1) exigent circumstances justified immediate entry into the house without a warrant, or (2) the independent source rule is applicable, or (3) the officers acted in good faith in seizing the evidence under a search warrant issued by the magistrate.

The controlling facts are undisputed; the question of whether to suppress becomes a question of law over which we exercise unlimited review. See *State v. Anderson*, 259 Kan. 16, 18, 910 P.2d 180 (1996).

## THE INITIAL SEARCH

Under the Fourth Amendment of the United States Constitution, searches conducted without warrants are per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *State v. Platten*, 225 Kan. 764, 769, 594 P.2d 201 (1979). In this case, the State relies upon the exigent circumstances exception. This exception allows a warrantless search where there is probable cause for the search and exigent circumstances justify an immediate search. See 225 Kan. at 769. In our opinion, the uncontroverted facts of this case gave the officers persuasive evidence of probable cause to believe the victim was kidnapped, beaten, and sexually violated.

The question is whether exigent circumstances existed. In making this determination, the *Platten* court relied upon the nonexclu-

sive list of factors set forth in *United States v. Reed*, 572 F.2d 412, 424 (2d Cir.), *cert. denied* 439 U.S. 913 (1978):

"(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause; (4) strong reasons to believe that the suspect is in the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended and (6) the peaceful circumstances of the entry. It is also recognized that the possible loss or destruction of evidence is a factor to be considered. [Citations omitted.]" 225 Kan. at 770.

That there were no material facts in dispute is apparent from the trial court's journal entry granting suppression. The trial court's central conclusions of law were:

"5. That under the facts of this case there was not exigent circumstance for the entry into the residence.
"6. That under the facts of this case the fruit of the poisonous tree doctrine extends the scope of the exclusionary rule to bar the admission of the drug substances and drug paraphernalia evidence."

The trial court's reasoning can be determined from bench comments made at the conclusion of the hearing. Those comments reinforce our belief that there were no disputed facts upon which the ultimate legal issue was decided. The trial court concluded there were no exigent circumstances to support a warrantless entry because the officers could have secured the perimeter of the residence and attempted to secure a search warrant; additionally, destruction of incriminating evidence by someone within the residence was unlikely.

We do not agree with the trial court's reasoning. Under the nonexclusive criteria noted in *Reed*, the action taken by the officers was objectively reasonable. The crime of kidnapping is a severity level 3 person felony with a presumptive sentence that includes incarceration. In addition, there is evidence the perpetrators threatened to kill the victim and did beat her. Although it is true that the victim did not relate to the officers that her attackers were armed, the serious nature of the alleged crimes would give rise to "an ever-present potential for exploding into violent confrontation." *People v. Escudero*, 23 Cal. 3d 800, 811, 153 Cal. Rptr. 825, 592 P.2d 312 (1979). The officers had ample evidence of probable

cause to believe one or more individuals who had committed these violent crimes were in the residence and would be alerted to detection and apprehension as a result of the victim's escape. Finally, the entry into the residence was during daylight hours and made peaceably. Another important factor noted in *Platten* is whether an immediate entry is necessary so that a perpetrator can be disabled from destroying or concealing evidence. In this case, the officers knew the perpetrators very probably were alerted by the victim's escape and given the opportunity could destroy physical and trace evidence. It is not unreasonable for the officers to believe hair, blood, and other bodily fluids could be washed off the body easily. We are convinced the officers rightfully were concerned about the potential for destruction of evidence if there was a delay to secure a search warrant.

We further note protection of evidence was not the only reason given for entering the house. The officers testified they also entered the house to identify and apprehend the suspects. The officers certainly had reason to believe one or more suspects were in the residence. The district court speculated no harm would have occurred had the officers secured the house to prevent the suspects from fleeing and waited for a search warrant. Again, we do not agree. Delay in entry may have permitted the perpetrators to forcibly resist apprehension. Thus, delay would increase the risk of harm not only to the police officers, but to the perpetrators or other persons within the residence. We simply cannot ignore that the police were in the middle of an ongoing investigation of serious, violent crimes that had just occurred; only with the benefit of subsequent events and hindsight could we know that a stakeout would have sufficed. What if there had been one or more persons in the residence that committed these alleged heinous crimes? That was the picture confronting the police officers when they had to decide if exigent circumstances supported a warrantless entry. For the reasons we have stated, their decision to make an immediate entry was not unreasonable.

## INDEPENDENT SOURCE TEST

The State also argues the evidence should not be suppressed under the independent source test. See *Wong Sun v. United States*,

371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963) (holding the fruit of the poisonous tree doctrine not applicable to evidence which the police can trace to an independent and lawful source). See also *State v. Waddell*, 14 Kan. App. 2d 129, Syl. ¶ 4, 784 P.2d 381 (1989), which holds:

"Evidence obtained unlawfully in violation of a defendant's constitutional rights is admissible under the inevitable discovery exception to the exclusionary rule where the prosecution can prove by a preponderance of the evidence that the unlawfully obtained evidence would have ultimately or inevitably been discovered by lawful means."

Assuming the application and affidavit for the search warrant contained information both lawfully and unlawfully obtained, the question remains whether the lawfully obtained information by itself supports probable cause that would have justified issuance of the search warrant by the magistrate.

In the affidavit in support of the application for issuance of a search warrant the affiant, a Jefferson County Sheriff's deputy, alleged aggravated kidnapping and aggravated sexual battery may have been committed. The deputy included in the items to be seized "[c]lothing, bedding, fibers, hairs and other trace evidence of the sexual crimes." This was followed by a statement of probable cause that included the following:

"A. On October 25, 1998, [the victim] reported she had been kidnapped and sexually assaulted. During the investigation Affiant obtained the following information from Jefferson County Sheriff's Deputy Jason Boyer.

1. Deputy Boyer advised me that he had the victim in his car and that she told him that she had come [from] the residence and premises to be searched.

2. She had been abducted from the parking lot of Johnny's Tavern, 401 N. Second, Lawrence, Kansas the night before.

3. Deputy Boyer stated that the victim did not know the names of her abductors.

4. Deputy Boyer said he was told that the victim had scene [*sic*] one of the subjects was passed out on a couch in one of the bedrooms when she left.

5. Deputy Boyer stated that he observed that the victim was not wearing a shirt, bra and had stated that she no longer had her underwear.

6. Deputy Boyer stated that the victim told him that she woke up in a strange house and found her jacket and pants on her but inside out.

"B. At that point, Affiant spoke with the victim and obtained the following information:

1. The victim left the door unlocked when she ran out.

2. She came out of the front door.

. . . .

"G. The following information from Detective Mike Pattrick with the Lawrence Police Department[.]

1. During the evening of October 24, 1998, the victim was abducted from the parking lot of Johnny's Tavern, 401 N. Second, Lawrence, Kansas.

2. The victim was beaten and under the influence of alcohol at the time. She was going in and out of consciousness while being transported.

3. The victim was taken to a location and assaulted in a room consistent with one of the bedrooms in the residence and premises to be searched.

4. She was forced to remove her clothing.

5. Her assailants then fondled her breasts and her buttocks.

6. During this time, the victim continued to slip in and out of consciousness.

7. She put her pants back [on] and jacket back on.

8. She was driven around, lost consciousness and woke up this morning [in] another bedroom of the residence and premises to be searched."

We conclude beyond a reasonable doubt that the magistrate would have issued a search warrant for the residence based upon the above lawfully obtained information possessed by the police before the warrantless entry into the residence. Consequently, we can state with reasonable certainty that the drugs and contraband in the residence would have been seized under the plain view exception. Accordingly, the exclusionary rule should not have been applied by the trial court. The State should not have been put in a worse position than it would have been in but for the alleged illegal search. See *Nix v. Williams*, 467 U.S. 431, 443, 81 L. Ed. 2d 377, 104 S. Ct. 2501 (1984).

## GOOD FAITH EXCEPTION

The State also argues if the entry was unlawful, the good faith exception in *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984), is applicable and precludes application of the exclusionary rule. We do not agree. The good faith exception saves a warrant ultimately found to be unsupported by probable cause but believed by the executing officers to be valid. Here, the admissibility of the evidence depended not on the good faith of the seizing officers but on the source of information used to obtain the search warrant.

In summary, we conclude that exigent circumstances existed permitting a warrantless entry into Weas' residence. Alternatively, even if we assume an initial unlawful entry, the factual information in the affidavit presented in support of the search warrant was sufficient under an independent source test to preclude strict application of the exclusionary rule. The trial court's order suppressing evidence seized from the residence is set aside.

Reversed and remanded.