Nos. 90,850
90,854

STATE OF KANSAS, *Appellant,* v. JERRI HUFF, *Appellee.*
STATE OF KANSAS, *Appellant,* v. JACK KELLEY, *Appellee.*
(92 P.3d 604)

Opinion filed June 25, 2004.

*Bobby J. Hiebert, Jr.*, assistant county attorney, argued the cause, and *Ellen Mitchell*, county attorney, and *Phill Kline*, attorney general, were with him on the brief for appellant.

*Randall L. Hodgkinson*, deputy appellate defender, argued the cause and was on the brief for appellee Huff.

*Michael K. Sheahon*, of Sweet and Sheahon, of Salina, argued the cause and was on the brief for appellee Kelley.

The opinion of the court was delivered by

BEIER, J.: The State brings these appeals to challenge the district court's suppression of evidence and its resulting dismissals of its prosecutions of Jerri Huff and Jack Kelley for possession of methamphetamine.

The facts that led to the suppression are as follows:

The Salina Police Department received an anonymous tip regarding loud music and the smell of marijuana coming from an apartment. Two officers were dispatched to the scene. The officers testified that as they approached the apartment, they did not hear music or smell marijuana. They also could not see inside the apartment.

One of the officers knocked on the door, and the resident, Bobbie Rogers, came out of the apartment and shut the door behind her. As she exited, the officers detected the smell of burnt marijuana but still did not hear loud music or see inside the apartment.

The officers asked Rogers for consent to search the apartment. Rogers refused and asked the officers to get a search warrant before entering. The officers did not ask Rogers if there were other people inside the apartment, and Rogers made no gestures or noise to indicate that there were other occupants. The officers heard no noise coming from inside. They nevertheless indicated they were going to enter the apartment and, when Rogers protested, they arrested her for obstruction.

Inside, the officers found defendants among the apartment's occupants.

Because Kelley had a marijuana pipe cupped in his hand, he was arrested and searched. One of the officers then found marijuana and methamphetamine in Kelley's pocket.

Huff and others were allowed to leave the apartment. The officers then obtained a search warrant and did a thorough search of the apartment. When that search turned up a silver container holding syringes, methamphetamine residue, and a slip of paper with Huff's name written on it, Huff also was arrested.

One officer testified that his reasonable belief that drugs were inside the apartment meant he could legally enter to secure it, but he did not have enough probable cause to search without a warrant. The officer believed it was necessary to secure the residence to prevent destruction of evidence, despite the lack of any objective evidence that the apartment was inhabited by anyone other than Rogers. "Securing the residence," according to the officer, included entering, requesting consent to search persons inside before they were permitted to leave, viewing of any items in plain

view, and walking through the apartment to ensure no one remained inside.

The district judge granted the defendants' motions to suppress, finding the officers' entry into the apartment unsupported by an articulable suspicion that there was anyone inside. The judge then asked the State if it had any additional evidence against defendants. When the prosecutor said there was no additional evidence, the judge immediately dismissed the case *sua sponte*.

Before we can reach the merits of the district judge's rulings on the motions to suppress, we must address appellate jurisdiction.

Huff and Kelley correctly observe that the State's notices of appeal cited K.S.A. 2003 Supp. 22-3602(b)(1), which authorizes the prosecution to appeal dismissal of a criminal case as a matter of right. The State's brief nevertheless relied upon arguments that the defendants' motions to suppress were granted in error. K.S.A. 22-3603, rather than K.S.A. 2003 Supp. 22-3602(b)(1), permits appeals from district court decisions to suppress evidence.

"Whether appellate jurisdiction exists is a question of law over which the appellate court's scope of review is unlimited." *State v. Hurla*, 274 Kan. 725, Syl. ¶ 1, 56 P.3d 252 (2002).

We agree with defendants that "[i]t is a fundamental proposition of Kansas appellate procedure that an appellate court obtains jurisdiction over the rulings identified in the notice of appeal." *State v. Walker*, 260 Kan. 803, Syl. ¶ 1, 926 P.2d 218 (1996).

In this case, the district court heard and decided the defendants' motions to suppress and immediately dismissed the cases *sua sponte* on June 3, 2003. The State filed its notices of appeal on June 5, 2003, stating in each that it was appealing "the decision of the District Court . . . entered on June 3, 2003." The journal entries memorializing the district judge's June 3 actions were not filed until June 12, 2003, and June 19, 2003. Thus the notices of appeal became effective on those dates. See Supreme Court Rule 2.03 (2003 Kan. Ct. R. Annot. 9) (advance filing of notice of appeal "shall have the same effect for purposes of the appeal as if the notice of appeal had been filed simultaneously with the actual entry of judgment").

The defendants rely on *State v. Kerby*, 259 Kan. 104, 910 P.2d 836 (1996), to argue that we lack jurisdiction.

In *Kerby*, the district court granted defendants' motions to dismiss. The State filed notices of appeal under 22-3603, the interlocutory appeal statute, even though the notices recited that the appeals were taken "from the *final* decision of the District Court." 259 Kan. at 105. (Emphasis added.) This court issued an order to show cause why the appeals should not be dismissed for lack of jurisdiction. Despite this clue, the State did not attempt to amend its notices, and it did not respond to the order to show cause until after the time to amend the notices had expired. 259 Kan. at 104-05. We dismissed the State's appeal for want of jurisdiction, following this court's earlier decision in *State v. G.W.A.*, 258 Kan. 703, 705-07, 906 P.2d 657 (1995).

In *G.W.A.*, the State's notice of appeal had "referred solely to an appeal from the judgment of acquittal. It contained no general reference which could be liberally construed to include an appeal on a question reserved." 258 Kan. at 707. Such a "limited and specific" notice of appeal could not be read to include an appeal on a question reserved despite its general citation to 22-3602, which contains a subsection permitting State appeals on such questions. We said:

"The State did not respond in its brief to the defendant's argument that the appeal should be dismissed for lack of jurisdiction. We can only presume that the State's argument would be as follows: In its notice of appeal, the State contends it is appealing directly to the Supreme Court pursuant to K.S.A. 1994 Supp. 22-3602. K.S.A. 1994 Supp. 22-3602(b)(3), allowing the State to appeal a question reserved, is the only section of 22-3602 which would permit a direct appeal to the Supreme Court. Thus, if the court did independent research and read the record, we could conclude that the State was appealing a question reserved. We think the State must give more guidance in its notice of appeal than that given in this case." 258 Kan. at 707.

We are not persuaded that these cases should follow *Kerby* and *G.W.A.* Here, the district judge dismissed the cases immediately after suppressing the evidence, without seeking or entertaining any further argument by either side. For all practical purposes, the district court's decision to dismiss and its decision to grant defen-

dants' suppression motions were one and the same. Thus the State's citation of the statute authorizing an appeal from the dismissals was sufficient to preserve its right to challenge the basis of the dismissal decisions, *i.e.*, the suppression of the evidence gathered after the apartment was entered. It was not required to move for reconsideration of the dismissal orders and attempt to convince the district judge that he should instead stay the proceedings pending interlocutory appeals under 22-3603. Rather, the State's recitation in each of its notices of appeal that it was seeking review of the district court's "decision" from June 3 was general enough to include the basis of the dismissal and to put the defendants on notice that the suppression would be addressed.

We now turn to a discussion of the suppression.

" 'When analyzing a district court's suppression of evidence, an appellate court reviews the factual underpinnings of a district court's decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. An appellate court does not reweigh the evidence. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review.' " *State v. Pritchett*, 270 Kan. 125, 128, 11 P.3d 1125 (2000).

The State defends the officers' entry into Rogers' apartment by asserting that they merely conducted a protective sweep to maintain the status quo and prevent the destruction of evidence. It asserts that the entry was consistent with Salina Police Department policy. Because, in the State's view, no search was conducted until after a warrant was obtained, the officers' behavior need not have met one of Kansas' recognized exceptions to the warrant requirement.

We cannot agree that a warrantless entry of a residence is excusable when a warrantless search of the residence would be unconstitutional. As the United States Court of Appeals for the Tenth Circuit has observed: " '[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.' " *United States v. Anderson*, 981 F. 2d 1560, 1567 (10th Cir. 1992) (quoting *Payton v. New York*, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 100 S. Ct. 1371 [1980]).

And our Kansas Court of Appeals has noted:

"The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights have been found to give special deference to the sanctity of privacy in an individual's home. The viewing by police into an area where an individual has a subjective expectation of privacy that society accepts as reasonable constitutes a search." *State v. Blair*, 31 Kan. App. 2d 202, Syl. ¶ 2, 62 P.3d 661 (2002).

In the present case, Rogers had a reasonable, subjective expectation of privacy in her home. See *State v. Morris*, 27 Kan. App. 2d 155, 157, 999 P.2d 283, *rev. denied* 269 Kan. 938 (2000). As social guests, defendants had standing to assert that expectation. *State v. Rice*, 264 Kan. 232, 239, 955 P.2d 1258 (1998); *State v. Vandiver*, 257 Kan. 53, Syl. ¶ ¶ 2, 3, 891 P.2d 350 (1995); *State v. Gonzalez*, 32 Kan. App. 2d 590, 593, 85 P.3d 711 (2004). The officers' protective sweep of the apartment constituted a search. See *Anderson*, 981 F.2d at 1567; *Blair*, 31 Kan. App. 2d 202; *Morris*, 27 Kan. App. 2d 157.

We must therefore consider whether any valid exception to the warrant requirement existed. The only potentially applicable exception is that which "allows a warrantless search where there is probable cause for the search and exigent circumstances justify an immediate search." *State v. Weas*, 26 Kan. App. 2d 598, 600, 992 P.2d 221 (1999), *rev. denied* 268 Kan. 895 (2000).

Our courts have relied upon the following nonexclusive list of factors set forth in *United States v. Reed*, 572 F.2d 412, 424 (2d Cir.), *cert. denied sub nom. Goldsmith v. United States*, 439 U.S. 913 (1978), to determine whether this exception applies.

" '(1) [T]he gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause; (4) strong reasons to believe that the suspect is in the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended and (6) the peaceful circumstances of the entry. It is also recognized that the possible loss or destruction of evidence is a factor to be considered. [Citations omitted.]' [Citation omitted.]" *Weas*, 26 Kan. App. 2d at 601.

These factors do not justify the entry into Rogers' apartment. Loud music and the smell of marijuana do not indicate that any suspect is likely to be charged with a violent offense. There was

nothing about the tip, the officer's own observations, or Rogers' behavior that would have led the officers to expect an armed confrontation. Probable cause was weak, if it existed at all. Once Rogers came outside, the officers had no evidence that even one other person remained in the apartment or was likely to escape. Although apparently peaceful, the officers' entry disregarded Rogers' explicit denial of consent and protest. The absence of evidence that someone remained inside also meant the officers had no reason to worry about evidence destruction.

We hold that the factual underpinnings of the district judge's decisions were amply supported by substantial competent evidence and that his legal reasoning was sound.

In the alternative, the State asserts that the doctrine of inevitable discovery should have been applied to save its cases from dismissal.

Under the inevitable discovery doctrine, evidence will not be suppressed, despite a constitutional violation in the way it was discovered or obtained, if the same evidence could have come to the attention of law enforcement independent of the violation. See *State v. Canaan,* 265 Kan. 835, 964 P.2d 681 (1998).

Application of the inevitable discovery doctrine would be inappropriate here. The constitutional violation was the entry into the apartment during the time when the defendants were inside. It was not inevitable that they would remain there, even if the officers had stood guard outside. They could have left and shut the door behind them, as Rogers did, with no adverse consequences.

In addition, absent the fruits of the illegal entry, the officers' ability to obtain a search warrant was not a foregone conclusion. The officers would have been left with no evidence beyond the smell of marijuana they detected when Rogers came outside. There is nothing in the record to demonstrate that the odor came from the apartment rather than Rogers herself. Moreover, few jurisdictions have held that the smell of marijuana emanating from a private residence alone is sufficient to establish probable cause to support a search warrant. See *State v. Becken,* 7 Neb. App. 438, 444-49, 585 N.W.2d 865 (1998); *State v. Rein,* 324 Or. 178, 182, 923 P.2d 639 (1996). Generally something more than "plain smell" is required. See *United States v. Kerr,* 876 F.2d 1440, 1442-45 (9th

Cir. 1989); *United States v. Carr*, 92 F. Supp. 2d 1137, 1140-42 (D. Kan. 2000); *Lustig v. State*, 36 P.3d 731, 731-33 (Alaska App. 2001); *State v. Caldwell*, 20 Ariz. App. 331, 332-35, 512 P.2d 863 (1973); *Barocio v. State*, 117 S.W.3d 19, 21-24 (Tex. Crim. App. 2003). Because this question is unsettled in Kansas, the officers' statements that they smelled burnt marijuana would not have guaranteed issuance of a warrant.

Finally, although its brief is not completely clear, the State also appears to argue that Rogers' arrest erased any expectation of privacy in the apartment. This suggestion is preposterous. Regardless of whether a person is in custody and regardless of whether a person happens to be inside his or her residence, he or she has a right to deny law enforcement entry absent probable cause and either a warrant or a valid exception. Fourth Amendment protection for one's home does not melt away every time one runs to the grocery store or takes a vacation — or even every time one is taken into police custody. And, as previously mentioned, social guests have standing to challenge the warrantless search of a home. See, *e.g., Rice*, 264 Kan. at 239; *Vandiver*, 257 Kan. 53, Syl. ¶ ¶ 2, 3; *Gonzalez*, 32 Kan. App. 2d at 593.

Affirmed.