NOT DESIGNATED FOR PUBLICATION

No. 114,512

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN E. HORTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed June 2, 2017. Reversed and remanded with directions.

*Brandy Roy-Bachman*, of Emporia, for appellant.

*Laura Miser* and *Carissa E. Brinker*, assistant county attorneys, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON and POWELL, JJ.

BUSER, J.: Steven Horton appeals his convictions for several drug offenses. He contends that law enforcement officers seized incriminating evidence from his apartment in violation of the search and seizure clause of the Fourth Amendment to the United States Constitution. Upon our review of the parties' briefs and record on appeal, and considering their oral arguments, we are persuaded that Horton's appeal has merit. Accordingly, we reverse Horton's convictions, vacate the sentences, reverse the district court's ruling denying Horton's motion to suppress, and remand to the district court to grant the motion to suppress.

1

On November 6, 2014, Officer Dominick Vortherms, a drug enforcement officer with the Emporia Police Department, submitted his signed affidavit to Lyon County District Judge Douglas P. Jones, in support of the issuance of a search warrant for 709 Sylvan St., Apartment 13, in Emporia. The affidavit stated:

> "On 11-05-2014 I met with Scott Sumpter who wanted to cooperate with the police department. Sumpter wanted to cooperate with the police because he had been charged with possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. Sumpter advised me at 1000 hrs, [he] had gone to Steven Horton's residence 709 Sylvan St. Apt. 13 to ask him if he had any marijuana for sale. While inside Horton's apartment Allison Hosmer, Horton, and himself smoked methamphetamine inside the apartment out of a glass pipe.
> "Horton also has no bond warrant for a fail to abide. This warrant was issued by Lyon County District [Court].
>
> "I have also seen Horton coming and going out of apartment 13 on 11-05-2014. I have also [seen] Sumpter and Horton meeting outside of this apartment complex.
> "I also spoke to management of the apartment complex, and she advised me Horton resides in apartment 13."

With the affidavit, Officer Vortherms presented Judge Jones with a search warrant to search the apartment for "[t]he person of Steven Earl Horton (11-17-1968), methamphetamine, a clear glass pipe, illegal contraband, and related items which would tend to identify the occupant/s" of the residence.

At 11:55 a.m. on November 6, 2014, Judge Jones signed and issued the search warrant. Importantly, all of the items to be seized listed on the search warrant were crossed out except the "person of Steven Earl Horton." At the hearing on the motion to

2

suppress, Officer Vortherms testified that "Judge Jones said I did not have enough probable cause in my affidavit, so we scratched those items out."

Officers of the Emporia Police Department, including Officer Vortherms, attempted to execute this search warrant on November 7, 2014. Upon arrival outside of Horton's apartment, Officer Vortherms knocked and announced, "Police. Search warrant." After about 30 seconds, Horton opened the front door and, when asked to do so, stepped outside the apartment, leaving the door ajar. Officers immediately placed Horton under arrest. At this time, Officer Vortherms detected a faint smell of marijuana— although he acknowledged he was initially uncertain whether the smell came from the apartment or from Horton himself.

Shortly thereafter, Officer Vortherms stated that he heard the sound of "the toilet running . . . like it had just been flushed" and saw two men he recognized "from previous law enforcement experience" hurrying from the area where he believed the bathroom was located in the apartment. Although he had never been inside this apartment, Officer Vortherms had been in similar apartments in the same complex and knew where the bathroom was typically located.

As to the two men inside the apartment, identified as Antonio Baker and Rafael Zuniga, Officer Vortherms recognized both of them because "we had previously had drug charges against them" from previous law enforcement encounters. According to Officer Vortherms, "I had arrested Mr. Baker—we had arrested—the task force had arrested Mr. Baker in the past for a large amount of methamphetamine as well as we—I believe we made attempted purchase off of Mr. Zuniga as well as executed a search warrant at his residence." After observing the two men hurry from the bathroom area, Officer Vortherms drew his weapon, entered Horton's apartment, ordered Baker and Zuniga to the floor, and handcuffed them.

3

At the suppression hearing, Officer Vortherms testified that he entered Horton's apartment because—based on the smell of marijuana, the running toilet, and the presence of Baker and Zuniga—he believed "they possibly were disposing of evidence or destroying that evidence at that time." In particular, the officer surmised this evidence was methamphetamine or marijuana. While inside the apartment, Officer Vortherms noticed a blackened Q-tip lying on the living room floor and a syringe cap on a nearby table—items the officer associated with illegal drug use.

Based in part on observations he made while standing inside the apartment, Officer Vortherms did not search the residence but left the scene to prepare a second search warrant of Horton's apartment.

The affidavit in support of the second search warrant contained the same information found in the first four paragraphs of the first search warrant affidavit. Additionally, it described Officer Vortherms' observations made while inside the apartment and statements Baker made after he was seized.

After reviewing the affidavit, Judge Jeffry J. Larson issued the second search warrant for "[m]arijuana, drug paraphernalia, illegal contraband, and related items which would tend to identify the occupant/s . . . ." Officers executed this search warrant and recovered from the apartment two pipes with residue and assorted drug-related paraphernalia. Subsequent forensic testing of the pipes revealed tetrahydrocannabinol (the active ingredient in marijuana) and methamphetamine.

Based on the items seized in the execution of the second search warrant, the State charged Horton with possession of methamphetamine, a severity level 5 nonperson felony, in violation of K.S.A. 2015 Supp. 21-5706(a) and (c)(1); possession of marijuana with a prior conviction, a severity level 5 nonperson felony, in violation of K.S.A. 2015

4

Supp. 21-5706(b)(3); and possession of drug paraphernalia, a class A misdemeanor, in violation of K.S.A. 2015 Supp. 21-5709(b)(2).

Prior to trial, Horton filed a motion to suppress the incriminating evidence collected from his apartment. Horton contended the warrantless entry was illegal because it was made without probable cause and there were no exigent circumstances. According to Horton, as a result of this illegal entry, Officer Vortherms discovered incriminating evidence which was later used, in part, to obtain the second search warrant which yielded the contraband used to charge Horton with drug offenses. The State responded that the initial warrantless entry into Horton's apartment was based on probable cause with exigent circumstances, and the subsequent entry and seizure of contraband was legal due to the execution of a valid search warrant.

Judge Larson denied Horton's motion to suppress. With regard to the affidavit supporting the first search warrant, the district court found the facts contained therein were "sufficient for a probable cause finding that was made by Judge Jones." Regarding the warrantless entry into the apartment immediately upon the arrest of Horton, Judge Larson found:

> "Once the officers got there to execute the search warrant looking for Mr. Horton, they knocked on the door, Mr. Horton answered the door. He came out with some assistance from law enforcement and he was arrested. What's important is what occurred during the time that he was being arrested and cuffed. At that time, Officer Vortherms said he smelled the odor of alcohol coming—excuse me, odor of marijuana coming from the inside of the apartment when the door was opened. He specifically stated that it was his belief that even after Mr. Horton was outside and cuffed that he could still smell the odor of marijuana coming from inside.
> "This coupled with the fact that he observed two grown men whom he recognized from previous drug investigations exiting the bathroom, which in and of itself is somewhat strange, coupled with the sound of the running toilet led this officer to believe that it was possible that those two individuals had engaged in destroying or hiding

some evidence. That is exigent circumstance that would justify going into the apartment without a warrant.

"The Court finds that the request to suppress the evidence is denied based upon two findings: One, the probable cause from the smell of marijuana; two, prior—or two individuals exiting the bathroom, who were known to be involved with the drug world and the running toilet provides for probable cause and also the exigent circumstance of possibility of evidence being destroyed."

Finally, as to the second search warrant's validity, the district court found there was sufficient evidence to support a probable cause finding given the odor of marijuana in the apartment, the presence of Baker and Zuniga, and items of contraband the officer personally observed in plain view after entering the apartment.

Following a jury trial, Horton was convicted of all three drug charges and sentenced to a controlling prison term of 20 months. He filed this timely appeal.

## WARRANTLESS ENTRY INTO THE APARTMENT

On appeal, Horton

"contends that the police entered his residence without a warrant, and without probable cause or exigent circumstances to justify a warrantless entry and upon entering his residence, illegally obtained information that was used as probable cause for a search warrant, which subsequently resulted in law enforcement finding illegal narcotics and drug paraphernalia in Defendant's residence. As the initial entry was invalid, under the 'fruit of the poisonous tree' doctrine, all evidence derived from the illegal entry, and subsequent search should be suppressed."

In response, the State focuses on the initial warrantless entry into the apartment and argues that "[b]oth probable cause and exigent circumstances existed which justified the officers' entry into the apartment." The State concludes that "there was substantial and

6

competent evidence to support Judge Larson's findings of fact and the legal conclusion made by Judge Larson is supported by the facts and the law."

We begin our analysis by summarizing our well-known standard of review: When reviewing a district court's grant or denial of a motion to suppress evidence, this court determines whether the factual findings underlying the trial court's suppression decision are supported by a substantial competent evidence standard. Substantial evidence means legal and relevant evidence that a reasonable person would find adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012); *State v. Walker*, 283 Kan. 587, 594-95, 153 P.3d 1257 (2007). Appellate courts do not reweigh the evidence or reassess the credibility of the witnesses. The ultimate legal conclusion drawn from those factual findings is reviewed under a de novo standard. *State v. Carlton*, 297 Kan. 642, 645, 304 P.3d 323 (2013).

The constitutional touchstone which will determine the validity of Officer Vortherms' search and seizure of contraband in this case is the Fourth Amendment to the United States Constitution. Kansas appellate courts also interpret §15 of the Kansas Constitution Bill of Rights to provide this same protection from unlawful governmental searches and seizures. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014).

In this case, although Officer Vortherms had a warrant to search the apartment and seize Horton, there was no need to execute the search warrant because Horton was seized by officers and arrested while standing *outside* his apartment. As a result, Officer Vortherms' entry into the apartment after Horton's arrest was made without the authority of the search warrant. For this reason, we first will review the propriety of the officer's warrantless entry into Horton's apartment.

A reasonable—and thus, constitutionally valid—search is "one conducted pursuant to a warrant." *State v. Estrada-Vital*, 302 Kan. 549, 556, 356 P.3d 1058 (2015). The

7

warrantless entry into a private dwelling by a law enforcement officer is considered unreasonable and invalid unless the State can prove the entry falls within a recognized exception to the warrant requirement. *Neighbors*, 299 Kan. at 239-40.

Although Kansas law recognizes numerous exceptions to the warrant requirement, the parties are in agreement that the only relevant exception in this case is the one for searches predicated on probable cause with exigent circumstances. *Neighbors*, 299 Kan. at 239 (citing *State v. Mendez*, 275 Kan. 412, 421, 66 P.3d 811 [2003]). As with any challenge to the legality of a search and seizure, the State bears the burden of proving the lawfulness of the law enforcement action. *State v. Bierer*, 49 Kan. App. 2d 403, 410, 308 P.3d 10 (2013).

Our Supreme Court has established the appropriate legal analysis to be used by appellate courts in considering the propriety of a warrantless search of a residence based on probable cause with exigent circumstances. Kansas courts use the following nonexclusive list of factors to determine whether a warrantless search was justified by the existence of probable cause and exigent circumstances:

> "'"(1) [T]he gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause; (4) strong reasons to believe that the suspect is on the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended and (6) the peaceful circumstances of the entry [as well as] the possible loss or destruction of evidence . . . .'" [Citations omitted.]" *State v. Huff*, 278 Kan. 214, 220, 92 P.3d 604 (2004) (quoting *State v. Weas*, 26 Kan. App. 2d 598, 601, 992 P.2d 221 [1999]).

In evaluating the propriety of Officer Vortherms' warrantless entry, we will follow the six-factor analytical progression set forth in *Huff*.

8

*1. The gravity or violent nature of the crime to be charged.*

Although Officer Vortherms suspected Horton of possessing illegal drugs in his apartment, Judge Jones issued the initial search warrant after striking any reference to illegal drugs or paraphernalia. These strike outs were the result of the district magistrate judge's determination that the affidavit containing incriminating information from Sumpter was insufficient to support issuance of the search warrant for drug-related items. Consequently, the initial search warrant only authorized the search of Horton's apartment to seize Horton, himself.

The warrant ordering Horton's seizure was authorized because he had an outstanding arrest warrant for failure to abide. Although the parties have not explained the meaning of a failure to abide warrant, the record contains Horton's motion to suppress evidence filed below which asserts that the bench warrant was issued upon a finding that Horton was in indirect civil contempt for not appearing at a court hearing related to his failure to pay $549.83 in fines and costs in a traffic case. In short, the subject matter of the initial search warrant was the seizure of Horton to compel his attendance at a civil contempt hearing, a purpose which was unrelated to any criminal offense.

Apart from the civil purpose of obtaining the initial search warrant, according to Officer Vortherms his warrantless entry was based on the belief that illegal drugs were present in the apartment. As a result, the officer's entry was predicated on investigating potential criminal offenses that were not of a grave or violent nature. In sum, this first factor weighs in favor of Horton because, under either rationale, the entry was not related to a grave or violent crime.

*2. Whether the suspect is reasonably believed to be armed.*

At the suppression hearing, Officer Vortherms conceded that although "drug dealers oftentimes carry guns or have weapons in the home to protect their stash or their money," he "had no knowledge" that Horton would be armed during this encounter. Moreover, the parties have not highlighted any evidence suggesting that Officer Vortherms was concerned about Baker or Zuniga being armed or dangerous. As a result, this factor weighs in favor of Horton.

*3. A clear showing of probable cause.*

Probable cause is the reasonable belief that there is a fair probability that the place to be searched contains contraband or evidence of a crime. *Florida v. Harris*, 568 U.S. 237, 133 S. Ct. 1050, 1055, 185 L. Ed. 2d 61 (2013); *State v. Sanchez-Loredo*, 294 Kan. 50, Syl. ¶ 2, 272 P.3d 34 (2012). In other words, probable cause to search requires the "presence of information which would lead a reasonably prudent person to believe that a crime has been or is being committed and that evidence of the crime may be found on a particular person, in a specific place, or within a specific means of conveyance. [Citation omitted.]" *State v. Mell*, 39 Kan. App. 2d 471, 482, 182 P.3d 1 (2008). When analyzing whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt. *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 (2004).

At the suppression hearing, Officer Vortherms testified about the reasons why he entered the apartment:

> "Because I could smell the odor of burnt marijuana coming from inside the apartment. I
> could hear a toilet being flushed or running. I have two men exiting a bathroom or a small
> space . . . . They exited there, Mr. Zuniga and Mr. Baker. I had previously—we had

previously had drug charges against them. I believe they possibly were disposing of evidence or destroying that evidence at that time."

In his ruling on Horton's motion to suppress, Judge Larson similarly found that Officer Vortherms' entry into the apartment was justified because of an odor of marijuana emanating from the apartment and two men whom Officer Vortherms "recognized from previous drug investigations" coming from the bathroom coupled with the sound of "the running toilet."

Was there a clear showing of probable cause to justify Officer Vortherms' warrantless entry into Horton's apartment? On appeal, Horton does not challenge the factual basis for the district court's findings, but he disputes the legal conclusion that the odor of marijuana provided Officer Vortherms and the assisting officers with probable cause to enter the apartment. Horton argues: "The mere faint odor of marijuana alone could not have supplied probable cause." Additionally, he asserts that the sound of a flushing toilet and the hurried exit from the bathroom area by Baker and Zuniga "might very well have an innocuous meaning and that there are other explanations for the circumstances in which two men might be in the bathroom together other than the disposal of illegal narcotics."

The State counters Horton's assertions, arguing that the odor of burnt marijuana coming from the apartment, coupled with the information provided by Sumpter which formed much of the basis for the initial search warrant affidavit gave Officer Vortherms a "sufficient factual basis to believe there was a crime being committed in Horton's apartment."

First, we consider the faint odor of marijuana that Officer Vortherms noticed upon Horton opening the door to his apartment. Kansas courts have found the smell of marijuana alone is sufficient to establish probable cause for the search of a motor vehicle.

11

See *State v. MacDonald*, 253 Kan. 320, 325, 856 P.2d 116 (1993) ("The marijuana odor provided the basis for the suspicion that a crime had been committed and that evidence in connection with the crime was located within the automobile."); *State v. Goff*, 44 Kan. App. 2d 536, 539, 239 P.3d 467 (2010) ("The smell of raw marijuana alone is sufficient to give an officer both reasonable suspicion and probable cause [to search a vehicle]."); see also *State v. Stevenson*, 299 Kan. 53, 58-59, 321 P.3d 754 (2014) (recognizing "bright-line rule" established in *MacDonald*).

While warrantless probable cause searches of motor vehicles based on the odor of marijuana have been upheld by Kansas appellate courts, warrantless probable cause searches of residences are another matter. See 3 LaFave, Criminal Procedure § 7.2, p. 721 (4th ed. 2015) (A lawful warrantless search of premises is an unusual event). As succinctly restated by the United States Court of Appeals for the Tenth Circuit:

> ""'[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."' *United States v. Anderson*, 981 F.2d 1560, 1567 (10th Cir. 1992) (quoting *Payton v. New York*, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 100 S. Ct. 1371 [1980])." *Huff*, 278 Kan. at 219.

In *Huff*, our Supreme Court considered a factual situation analogous to this case. There, police officers responded to an anonymous complaint of loud music and the odor of marijuana at an apartment complex. Arriving officers could not hear loud music, but they did smell marijuana when the resident opened the front door to the apartment and stepped outside. Although the resident declined to consent to a search of the premises and there was no evidence that other people were inside the apartment, officers conducted a warrantless search, arguing they had done so to prevent destruction of evidence.

One defendant found in the apartment, Jack Kelley, was arrested after a personal search revealed marijuana and methamphetamine. The officers later obtained a search

warrant based on information obtained from the warrantless entry, and they conducted a thorough search of the apartment which uncovered incriminating evidence resulting in drug charges against Huff.

Addressing the officers' warrantless entry into the apartment, our Supreme Court applied the six factors discussed earlier and held that the officers lacked probable cause to initially enter and search the apartment without a warrant. As a result, the Supreme Court upheld the lower court's ruling suppressing the incriminating evidence obtained from this illegal search. 278 Kan. at 220-21.

Although not determinative to its ruling, in *Huff* our Supreme Court provided dicta that is worthy of consideration:

> "[F]ew jurisdictions have held that the smell of marijuana emanating from a private residence alone is sufficient to establish probable cause to support a search warrant. [Citations omitted.] Generally something more than 'plain smell' is required. [Citations omitted.] Because this question is unsettled in Kansas, the officers' statements that they smelled burnt marijuana would not have guaranteed issuance of a warrant." 278 Kan. at 221-22.

Despite this dicta, a panel of our court found the "strong odor" of marijuana created probable cause to search a defendant's apartment, "at least for the limited purpose of preventing the destruction of evidence until a search warrant could be obtained." *State v. Hubbard*, No. 113,888, 2016 WL 1614177, at *1-2, 7 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* May 10, 2016.

In *Hubbard*, law enforcement officers confronted the defendant outside his apartment and reported a "'strong odor of raw marijuana emanating from the apartment'" every time the defendant opened the front door. 2016 WL 1614177, at *1. These officers also described seeing at least five to seven other people in the apartment. The officers

13

were denied entry, but they ordered everyone out of the residence and conducted a "security sweep" during which they discovered incriminating evidence. 2016 WL 1614177, at *2. A search warrant was later obtained for the apartment.

In the panel's decision upholding the officers' warrantless entry and protective search, it acknowledged the "Kansas Supreme Court has not yet directly decided whether the odor of marijuana alone is sufficient to provide the probable cause required to support a warrantless search of a home." 2016 WL 1614177, at *6. Nevertheless, highlighting cases wherein Kansas courts have ruled that the smell of marijuana emanating from an automobile provided probable cause to search, the panel concluded that the strong odor of marijuana emanating from the residence provided probable cause for the officers to make a warrantless entry for the limited purpose of preventing the destruction of evidence pending the issuance of a search warrant. 2016 WL 1614177, at *6-7.

We are not prepared to follow the lead of the *Hubbard* panel. Rather, we find guidance in *Huff*'s dicta that an odor of marijuana emanating from a residence— especially a "faint" one as opposed to an "overwhelming" one as described in *Hubbard*, 2016 WL 1614177, at *6, is ordinarily not sufficient, in itself, to constitute probable cause. As a general legal proposition in many states, something more than an odor of marijuana is needed to comprise probable cause.

In this case, the district court found something more in the presence of Baker and Zuniga. Judge Larson characterized the men as "two individuals exiting the bathroom, who were known to be involved with the drug world." This description, according to the district judge, contributed to a probable cause finding. Regarding the relationship between Baker and Zuniga and their involvement with "the drug world," we question whether this factual finding by the district court was supported by substantial competent evidence, and if so, whether it provided a sufficient additional basis to justify the court's finding of probable cause.

14

The evidence tying Baker and Zuniga to illegal drug possession and/or prior drug involvement was both lacking and ambiguous. From Officer Vortherms' testimony, the district court learned that both men "had previously had drug charges against them." The disposition of those charges, however, was never established. It is understatement to observe that while knowledge of the men's prior drug *convictions* would have added to the probable cause calculation, an acquittal rendered in the drug case would not have contributed to the calculus. The dispositions of the drug charges in this case are unknown.

Officer Vortherms also related that "the task force had arrested Mr. Baker in the past for a large amount of methamphetamine." Once again, whether Baker actually possessed or was charged with and convicted of illegal possession or distribution of methamphetamine was not mentioned.

Additionally, Officer Vortherms "believe[d] we made attempted purchase off of Mr. Zuniga as well as executed a search warrant at this residence." At the risk of redundancy, whether any of this law enforcement activity resulted in actually seizing illegal drugs or paraphernalia from Zuniga or his residence, or whether Zuniga was charged and convicted as a result, is simply unknown.

Finally, regarding the alleged connections between Baker and Zuniga and their use or possession of illegal drugs, the nature of the charges, the illegal drugs involved, and the approximate date of the offense(s) or conviction(s), if any, would have provided the district court and appellate court with valuable information to evaluate the two men's purported ties to illegal drugs. Unfortunately for the State, this information was never presented to the district court.

In summary, the State did not meet its burden of proof in establishing a factual basis tying Baker and Zuniga to the possession of illegal drugs. As a result, we are

15

persuaded that the trial judge's factual finding that Baker and Zuniga "were known to be involved with the drug world" was not supported by substantial competent evidence.

We note in passing that the State's probable cause argument has two components—the odor of marijuana coming from the apartment and one sentence which states: "Officer Vortherms also had the information that he had previously obtained and submitted in his initial search warrant." At the outset, a point raised incidentally in a brief and not argued therein is deemed abandoned. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015). The State's one sentence statement only incidentally raises this issue. Accordingly, we deem it abandoned. Second, Officer Vortherms did not assert, and the district court did not find, that Sumpter's claim of prior smoking methamphetamine with Horton in the apartment was part of the probable cause calculus to justify the warrantless entry. As a result, we have no reason to evaluate whether it contributed to Officer Vortherms' supposition that probable cause existed to enter the apartment.

Considering the totality of the circumstances comprising probable cause, we conclude that the faint odor of marijuana coupled with the presence of Baker and Zuniga leaving the bathroom area did not constitute "'a clear showing of probable cause,'" which is the third factor to be considered under the *Huff* test. See 278 Kan. at 220. This factor weighs in favor of Horton.

*4. Strong reasons to believe that the suspect is on the premises.*

In the present case, Horton was listed as a person to be seized in the initial search warrant. To the extent this made him a suspect on the premises, it is uncontroverted that he was seized outside, not inside, his apartment. Moreover, as discussed in the prior section, there was insufficient and ambiguous information tying Baker and Zuniga to illegal drugs in order to characterize them as suspects on the premises. This factor weighs in favor of Horton.

16

*5. A likelihood that the suspect will escape if not swiftly apprehended.*

As noted in the fourth factor, Horton was swiftly apprehended but the arrest was made *outside* his apartment and, as a result, there was no need for Officer Vortherms to enter the premises to execute the warrant or prevent his escape. Although Baker and Zuniga were inside the apartment, given the lack of evidence presented by the State at the suppression hearing, they could not be considered suspects. This factor weighs in favor of Horton.

*6. The peaceful circumstances of the entry and the possible loss or destruction of evidence.*

Of particular relevance to this factor is Officer Vortherms' testimony that he entered Horton's apartment because he believed Baker and Zuniga "possibly were disposing of evidence or destroying that evidence at that time." In particular, the officer surmised this evidence was methamphetamine or marijuana.

In its ruling on Horton's motion to suppress, the district court found that exigent circumstances existed. The court reasoned that the smell of marijuana, "coupled with the fact that [Officer Vortherms] observed two grown men whom he recognized from previous drug investigations exiting the bathroom . . . coupled with the sound of the running toilet," gave the officer reasons to believe that evidence was being destroyed or hidden and, thus, the warrantless entry into Horton's apartment was justified.

On appeal, Horton argues that the faint smell of marijuana did not indicate current use, that there were innocuous reasons for flushing toilets other than the disposal of drugs, that since the two men had left the bathroom any drugs flushed down the toilet were already disposed of, and the officers could have simply ordered Baker and Zuniga to halt, directed them out of the apartment, and remained outside maintaining security while attempting to obtain a search warrant.

17

For its part, the State highlights that Baker and Zuniga were "known to be involved in the drug community" and the presence of these men hurrying from the bathroom area, along with the sound of a flushing toilet, gave Officer Vortherms reason to believe evidence was being destroyed.

The exigent circumstances of loss or destruction of evidence exist when law enforcement officers reasonably believe "'there is a threat of imminent loss, destruction, removal, or concealment of evidence or contraband.'" *State v. Fewell*, 286 Kan. 370, 384, 184 P.3d 903 (2008). This exigency does not extend to situations "'where only a mere possibility exists that evidence could be destroyed or concealed. [Citation omitted.]'" 286 Kan. at 385 (quoting *State v. Boyd*, 275 Kan. 271, 274, 64 P.3d 419 [2003]). Thus, courts must consider the particular facts of each case. *Fewell*, 286 Kan. at 384.

As previously discussed, for purposes of exigent circumstances, the relevance of Baker and Zuniga hurriedly leaving the bathroom area with the toilet running is predicated on the notion that the two men were drug users or dealers who were flushing illegal drugs or contraband down the toilet upon learning of Officer Vortherms' arrival. But as discussed earlier, the State's evidence did not show that the two men ever possessed or used illegal drugs, were drug dealers, or were ever convicted of any drug offenses. Without that critical background knowledge, we are left with an apartment with a faint odor of marijuana and two men hurriedly leaving a bathroom area with the toilet having been flushed. In short, without the important nexus that Baker and Zuniga were involved with illegal drugs, the exigent circumstances essential to justifying a warrantless search are lacking.

In summary, we conclude the district court erred in its finding of fact that Baker and Zuniga "were known to be involved with the drug world" because the connection between the two men and their possession, use, or distribution of illegal drugs was not shown by substantial competent evidence. We also find that Judge Larson erred in his

18

legal conclusion that Officer Vortherms' entry into Horton's apartment was valid as an exception to the warrant requirement. Applying the *Huff* standards to the proven facts of this case, we find as a matter of law there was not a clear showing of probable cause and exigent circumstances to justify Officer Vortherms' warrantless entry into Horton's apartment.

## VALIDITY OF THE SECOND SEARCH WARRANT

Next, we consider the consequences of the illegal warrantless entry. In this regard, it should be noted that all of the illegal drugs and contraband Horton sought to suppress only were seized from the apartment *after* the execution of the second search warrant. As a result, the validity of the second search warrant is the next matter to be considered.

Horton states without much analysis in support:

> "The search warrant ultimately issued by Judge Larson was based on information derived from that illegal entry and search. As such the search warrant is 'fruit of the poisonous tree' and all evidence derived from the execution of the initial warrantless entry, and the execution of the search warrant should be suppressed . . . ."

The State does not address Horton's fruit of the poisonous tree argument, apparently relying on the validity of the initial warrantless entry.

In the present case, the district court determined that the affidavit in support of the second search warrant stated sufficient probable cause. This ruling, however, was based in part, on facts that were obtained through Officer Vortherms' inadmissible warrantless entry into the apartment. Under these circumstances, we adhere to the following standard of review:  "When an appellate court determines that the district court erred in upholding seizure of certain evidence upon which a search warrant's issuance was based in part, it must determine the validity of the warrant's issuance based upon the remaining, lawfully

19

obtained, evidence." *State v. Fisher*, 283 Kan. 272, Syl. ¶ 10, 154 P.3d 455 (2007). We review the affidavit in support of the search warrant under a deferential standard: "the standard is whether evidence provided the magistrate issuing the search warrant with a substantial basis for determining probable cause existed." 283 Kan. 273, Syl. ¶ 11.

Officer Vortherms' affidavit in support of the second search warrant restated the information contained in the first paragraph of the first search warrant affidavit about Sumpter having been charged with several drug crimes and his wish to cooperate with police. The affidavit also contained information that Sumpter said he had smoked methamphetamine while inside of Horton's apartment. This information had previously been submitted to Judge Jones who found it insufficient to support probable cause for issuance of the first search warrant to seize evidence related to illegal drugs.

The rest of the second affidavit stated:

"On 11-7-2014 Det. Davis, Inv. Ayer, and I executed a search warrant at 0959 hrs. This search warrant was for the person Steve Horton at the location of 709 Sylvan St. Apt. 13, Emporia, Lyon County, Kansas. I knocked on the front door of the apartment, and announced Police Search Warrant, several times. A short time later, the door opened as I was trying to make entry into the apartment with a key. The person who answered the door was Steve Earl Horton. When Horton opened the door to the apartment, I smelled the faint odor of burnt marijuana coming from inside the apartment. Horton was placed into handcuffs at this time. I then observed Rafael Zuniga and Antonio Baker exit the bathroom of the apartment together. The toilet was also running at this time. I placed them into handcuffs at this time. While placing them into handcuffs I observed a q-tip on the floor of the apartment. This q-tip had black residue on the end of it. I know Q-tips to be used to clean out marijuana and methamphetamine pipes. I also observed a syringe cap on the table in the apartment. I read both Zuniga and Baker their rights per Miranda Warnings. I also know Zuniga and Baker to be known drug users.

20

"Baker advised me he had stopped by Steve's apartment to purchase marijuana. I asked Baker if there was marijuana or methamphetamine inside the apartment, he said no."

In upholding the validity of the second search warrant affidavit, the district judge found:

"With regard to the second search warrant, counsel argues that the fact that some of the information we heard today was not included in the affidavit; one, that Mr. Horton was arrested actually outside of his apartment, and the fact that Judge Jones had struck from the previous request information requesting methamphetamine and other drug paraphernalia. While that is not in the second search warrant affidavit, I do not believe that it would have had any impact on myself had it been included. When I look at the information contained in the actual affidavit itself, it's clear to me that there is sufficient probable cause to justify the warrant being issued. For the reasons that I described earlier and you add to that the fact that once they went into the house, excuse me, the apartment to arrest Mr. Baker and Mr. Zuniga, the other items they found, including the burnt Q-tip and the—just a moment, I think there was a syringe cap they also recognized. That information . . . included in the affidavit is sufficient for the probable cause finding. Defense motions are denied."

At the outset, we question the reliability of the information provided by Sumpter. First, as related in the affidavit, Sumpter was providing information to Officer Vortherms in an effort to cooperate with law enforcement after his arrest for various drug offenses. Our court has previously stated that when honest citizens report criminal activity which, if fabricated, would subject that person to criminal liability, there is a presumption of reliability. *State v. Landis*, 37 Kan. App. 2d 409, Syl. ¶ 4, 156 P.3d 675 (2007). However, "when the person providing the information was a participant in the crime under investigation or has been implicated in another crime and is acting in the hope of gaining leniency, the presumption of reliability is inapplicable." 37 Kan. App. 2d 409, Syl. ¶ 4. Under these circumstances, "corroboration by an independent police investigation would help establish probable cause." 37 Kan. App. 2d 409, Syl. ¶ 5.

21

In this case, there was no law enforcement investigation corroborating Sumpter's claims. Sumpter was apparently a first-time informant whose reliability had not been established. Without the presumption of reliability, both district court judges and this court were presented with an unverified claim of drug use by Horton in his apartment on the day prior to the execution of the second search warrant.

From his comments made at the motion to suppress hearing, we are uncertain if Judge Larson considered Sumpter's claims in evaluating the sufficiency of the second search warrant affidavit. We observe that Officer Vortherms' failure to advise Judge Larson of Judge Jones' ruling that this information was insufficient may be considered a material omission. Regardless, we agree with Judge Jones that Sumpter's unverified claims provided an insufficient basis to search Horton's apartment for drugs and paraphernalia. As a result, we have not considered Sumpter's claims in evaluating the propriety of the second search warrant affidavit.

We have disregarded other material contained in the affidavit under the fruit of the poisonous tree doctrine. In particular, given Officer Vortherms' illegal entry, we have not considered his plain view observation while inside the apartment of the Q-tip with black residue or a syringe cap. (As an aside, even if we had considered the Q-tip with black residue, we would have discounted Officer Vortherms' assertion that this item is used to clean out marijuana and methamphetamine pipes because the affidavit contained no information establishing the officer's knowledge, training, or experience in drug investigations.) We also have not considered any statements made by Baker following his apparent arrest inside the apartment, although the gist of his statements appear to be that no marijuana or methamphetamine were inside the apartment.

We do note that in his affidavit Officer Vortherms averred:  "I also know Zuniga and Baker to be known drug users." Our difficulty in evaluating this statement relates to our previous discussion regarding whether there was probable cause to enter the

apartment without a warrant. In the hearing on the motion to suppress evidence, Officer Vortherms did not testify that the two men were known drug users. The statement that Baker and Zuniga were drug users, although conclusory, coupled with the faint odor of marijuana, could provide an inference that the apartment contained illegal drugs. For our purposes of evaluating the validity of the second affidavit, we will give some consideration to Officer Vortherms' knowledge of Baker and Zuniga as known drug users.

After redacting the above-mentioned material from the affidavit, we are left with a faint odor of burnt marijuana and Baker and Zuniga, known drug users, hurriedly leaving the bathroom area after the toilet was flushed. Even under our deferential standard, the totality of circumstances set forth in the second affidavit did not constitute sufficient probable cause to issue the second search warrant for evidence of illegal drugs and paraphernalia. Accordingly, we conclude the district court erred as a matter of law in finding there was sufficient probable cause to order the search of Horton's apartment for the seizure of incriminating evidence.

We reverse Horton's convictions, vacate the sentences, reverse the district court's ruling denying Horton's motion to suppress, and remand to the district court to grant the motion to suppress.

Reversed, sentences vacated, and case is remanded.

* * *

POWELL, J., dissenting: For the reasons stated in *State v. Hubbard*, No. 113,888, 2016 WL 1614177 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* May 10, 2016, an opinion in which I joined, I dissent. Law enforcement had sufficient justification to enter the apartment without a warrant due to the smell of marijuana emanating from inside the premises and, more importantly, the need to prevent the

destruction of evidence. Moreover, law enforcement's calculus concerning the possibility that evidence was being destroyed or hidden was not dependent on whether Baker and Zuniga had drug convictions but, rather, because Vortherms heard the sound of the toilet running as though it had recently been flushed and saw Baker and Zuniga hurrying from the area where the bathroom was located. These facts gave Vortherms all the justification he needed to enter the house and detain Baker and Zuniga. What Vortherms observed while detaining Baker and Zuniga—a blackened Q-tip lying on the living room floor and a syringe cap on a nearby table, items he associated with criminal drug use—provided sufficient additional facts to support probable cause for the second warrant to search the rest of the apartment. I would affirm the district court's denial of the motion to suppress.